# JANICE K. HOPP v. RODNEY HOPP.

156 N. W. (2d) 212.

January 26, 1968—No. 40,491.

*Martin E. Raskin* and *Manly A. Zimmerman,* for appellant.
*Smith & Munro,* for respondent.

SHERAN, JUSTICE.

Appeal from orders of the District Court of Hennepin County, one dated July 12, 1966, directing confinement of defendant, Rodney Hopp, for contempt of court; and the other dated July 19, 1966, denying his motion to reduce support payments.

The divorce decree was dated August 28, 1964. Before the divorce action was begun in 1963, defendant had been employed as a salesman by the Canada Dry Corporation. He also owned the Lake Street Dairy Store. His salary at Canada Dry was $8,600 and his income from the store was about $2,400 a year. After the action began, defendant was discharged by Canada Dry. Since then, his sole source of income has been the dairy store where he works approximately 100 hours per week. His 1964 income was $3,770, and his 1965 income was $1,380.

Under the 1964 divorce decree which confirmed a stipulation by the parties, plaintiff was to receive $30 per week support for their child and $15 per week as alimony.

The following year the plaintiff moved that the defendant be found in contempt for nonpayment of support. On July 7, 1965, the court found that the defendant was in arrears in support and alimony payments but dismissed the contempt proceedings against him. It suspended the ordered payments until January 1, 1966, and in lieu thereof required $25 per week payment for child support. This reduction was rescinded by the court on plaintiff's motion by an order dated August 24, 1965.

On September 24, 1965, a hearing was held on a motion by the plaintiff that defendant be found in contempt for failure to pay and upon defendant's motion for reduction in support payments. The defendant was found in contempt of court and sentenced to 30 days in the workhouse. The sentence was stayed upon the condition that defendant henceforth pay all support when due and that he take reasonable measures to consolidate his financial affairs and to secure income within the range of his earning ability. The weekly support payments were reduced to $35 and the matter was continued until November 26, 1965, to allow the court to consider the problem again.

On November 26, 1965, the court placed defendant on probation for 1 year. Among the conditions of probation were that defendant be truthful to the probation officer; that he pay for current support $35 per week and pay on arrearages of $555 in amounts as directed by the probation officer; that he submit to the probation officer verified monthly financial statements. On December 1, 1965, the probation officer set the amount to be paid on arrearages at $15 per week, effective December 13.

In February 1966 the probation officer reported that the defendant had violated his probation in the following ways: (a) He had not been truthful with the probation officer; (b) he had not made the required payments on his arrearages of $555; (c) he had not submitted the verified monthly financial statements as previously ordered. The defendant then again moved the court to reduce support from $35 per week to $20 per week, and to cancel all past-due installments of alimony and to eliminate all future alimony and to cancel all outstanding arrearages for support.

At a hearing on March 22, 1966, the parties stipulated that a financial investigation of defendant be made by the Department of Court Services for Hennepin County. On July 7, 1966, defendant was charged with failure to pay his support payments and arrearages to plaintiff. At the conclusion of the hearing on this charge the court on July 12, 1966, revoked the stay of sentence for contempt and directed confinement of defendant for 14 nights. On July 19 the court denied defendant's motion to decrease the child support to $20 per week. Appeal is taken from both orders.

We have concluded that the case must be remanded to the district court for further proceedings because:

(1) The findings and conclusions filed in support of the order of September 24, 1965, whereby defendant was found to be in contempt for failure to make support and alimony payments do not include an essential finding that defendant was able to comply with the order of the court directing that such payments be made.

(2) The findings of the court made in support of its July 1966 order terminating the stay of the September 24, 1965, sentence and directing confinement do not include a determination of defendant's ability to comply with those conditions of his probation which involved making payments to plaintiff. Clausen v. Clausen, 250 Minn. 293, 84 N. W. (2d) 675.

(3) The July 1966 order in committing defendant to the county jail does not make entirely clear the method available to defendant to purge himself of the contempt and effect his release from confinement.

The comments which follow are intended for the guidance of the court on remand.

■ The frequency of divorce and the difficulties often experienced in making effective court decrees providing for the support of the wife and children present a serious social problem. Given the burden of meeting this problem, trial judges must be provided with the tools demanded by the job. In many of these cases, use of its power to make confinement the alternative to compliance with its orders is essential to the trial court's function.

The process by which this power is exercised is termed a civil contempt proceeding. The distinctive quality of a civil, as distinguished from a criminal, contempt is that of purpose. In exercising civil contempt powers in divorce cases, the only objective is to secure compliance with an order presumed to be reasonable. *Punishment for past misconduct is not involved; that is a field reserved to criminal proceedings of which criminal contempt is one example.* Peterson v. Peterson, 278 Minn. 275, 153 N. W. (2d) 825; Zieman v. Zieman, 265 Minn. 190, 121 N. W. (2d) 77; 17 C. J. S., Contempt, §§ 5(2) to 7.

Because of the limited and essential purpose of civil contempt proceedings, particularly in divorce cases where alimony and support are ordered, we must recognize here a measure of authority and discretion in the trial judge far in excess of that which exists in criminal cases. In civil contempt, the function of the court is to make the rights of one individual as against another meaningful. When the duty is performed, the concern of the court is satisfied. If the duty is one specifically defined by a proper decree of the court, it must be free to compel performance by methods which are speedy, efficient, and sufficiently flexible to meet the problem at hand. Particularly in support cases, the proper discharge of the judge's responsibilities should not be frustrated by delay and formalism.

■ Even so, the recognized limits on the power of a trial judge in the exercise of his civil contempt powers require:

■ That the ordering court had jurisdiction of the subject matter and the person. Papke v. Papke, 30 Minn. 260, 15 N. W. 117; Red River Potato Growers Assn. v. Bernardy, 128 Minn. 153, 150 N. W. 383; 17 C. J. S., Contempt, §§ 14 and 64; 17 Am. Jur. (2d) Contempt, § 42; Annotation, 12 A. L. R. (2d) 1059.

■ That the decree of the court clearly defined the acts to be performed by a party to the proceedings. International Longshoremen's Assn. Local 1291 v. Philadelphia Marine Trade Assn. 389 U. S. 64, 88 S. Ct. 201, 19 L. ed. (2d) 236; 17 Am. Jur. (2d) Contempt, § 52.

■ That the party directed to perform had notice of the court's decree and a reasonable time within which to comply. 17 C. J. S., Contempt, §§ 18 and 78; 17 Am. Jur. (2d) Contempt, § 41.

■ That the party adversely affected by the alleged failure of the directed party to comply has applied to the court for aid in compelling performance, giving specific grounds for complaint. 17 C. J. S., Contempt, § 72(2); 17 Am. Jur. (2d) Contempt, § 86; Clausen v. Clausen, 250 Minn. 293, 84 N. W. (2d) 675; State ex rel. Hoefs v. District Court, 113 Minn. 304, 129 N. W. 583.

■ That upon due notice a hearing be conducted and at such hearing the party charged with nonperformance be given an opportunity to show compliance or his reasons for failure. See, 4 Dunnell, Dig. (3 ed.)

§ 1705; Minn. St. 588.09; Krmpotich v. Krmpotich, 227 Minn. 567, 35 N. W. (2d) 810; Laff v. Laff, 161 Minn. 122, 200 N. W. 936; 17 C. J. S., Contempt, § 85(1); 17 Am. Jur. (2d) Contempt, § 88.

■ That the court after such a hearing should determine *formally* (Clausen v. Clausen, *supra;* 17 C. J. S., Contempt, §§ 85[5], 86[3]) whether there was a failure to comply with the order and, if so, whether conditional confinement is reasonably likely to produce compliance fully or in part. Cohen v. Mirviss Mfg. Co. 173 Minn. 100, 216 N. W. 606.

■ That confinement should not be directed to compel a party to do something which he is wholly unable to do. But the burden of proving inability should be on the defendant, who should not be held to have sustained it when he has failed to make a good-faith effort to conform. See, Laff v. Laff, *supra;* Cohen v. Mirviss Mfg. Co. *supra;* 4 Dunnell, Dig. (3 ed.) § 1708; 17 C. J. S., Contempt, § 19; 17 Am. Jur. (2d) Contempt, § 51.

■ That when confinement is directed, the party confined should be able to effect his release by compliance or, in some cases, by his agreement to comply as directed to the best of his ability. Minn. St. 588.12; State ex rel. Hoefs v. District Court, *supra;* Wilkins v. Corey, 172 Minn. 102, 214 N. W. 776; 17 C. J. S., Contempt, §§ 88(5) and 93; 17 Am. Jur. (2d) Contempt, § 111.

■ The statement of these general rules does not meet precisely the problem posed by the party who is directed to pay money for the support of his family and fails to do so, not because he is unable to earn enough to meet the directed obligation, but because he is unwilling to work at an occupation for which he is adapted and in which he could be productive. The civil contempt power, by definition, cannot be used to punish a person for past misconduct or confine a person until he does the impossible. But lack of ability and lack of willingness are two different things.

What of the person who is unwilling to perform and renders himself "unable" to perform by refusing to follow a reasonably remunerative pursuit for which he is suited? What can the court do in such a case to avoid frustration? Can it direct a person to work at a specific job against his will and jail him if he does not? Apparently not, in

light of constitutional restraints involving compulsed labors. Can the court substitute its judgment for that of the directed party as to what course he should follow in the details of his business affairs by ordering that he go through bankruptcy proceedings, for example? Probably not, because of the difficulty in coming to a certain judgment that one course of business conduct is to be preferred to another. But, can the trial judge refuse to accept inability to perform as an excuse for failure to comply if he is satisfied that the party directed to pay has not made a reasonable effort by means of his own selection to conform to an order well within his inherent, but unexercised, capacities? The answer to this question must be in the affirmative if the efforts of courts to secure support for children of severed marriages is to become something more than an exercise in futility.

Upon remand, the rule of law to be applied is as expressed in State ex rel. Houtchens v. District Court, 122 Mont. 76, 82, 199 P. (2d) 272, 275, where the court said:

"Lack of ability to support one's wife and dependent offspring must not be confused with lack of will to discharge such legal, moral and social obligation. Little sympathy can be had for a husband and father who willfully fails and refuses to support his family. The husband is not relieved of liability to comply with the court's orders in that behalf merely because he has no property or because he is not gainfully employed. His ability to perform labor; his opportunity to find gainful employment; his disposition and will to earn money and contribute a reasonable amount to his family's support, and his diligence in seeking employment that will yield, at the very least, sufficient wages to provide for himself and dependents the necessaries of life should also be considered."

Amplification of the principle may be found in 2 Nelson, Divorce and Annulment (2 ed. 1961 rev.) p. 435:

"Various factors may bear upon ability to comply. The question is not merely one of the amount of cash which the husband has on hand. * * * He cannot be compelled to work and earn the wherewithal to meet the court's mandate if he is physically or for other good reason

unable to do so. On the other hand, he will not be permitted to succeed on a defense of inability to comply where he has chosen his own situation and declines to make any reasonable effort to employ his earning capacity in other directions. Nor can he arbitrarily sit back and refuse to work when he has the capacity for gainful employment."

There is language in Clausen v. Clausen, 250 Minn. 293, 84 N. W. (2d) 675, which, taken out of the context of the problem there presented, could be read to suggest that the courts in civil contempt proceedings cannot consider a defendant's capacity to earn in determining his ability to pay. But in that case no evidence was produced at the hearing upon the charges of contempt (see paragraph 2[e] above) to show that defendant was able to comply and he was not examined by the court on this question as required by Minn. St. 588.09 and 588.10. In any event, subject to constitutional limitations forbidding involuntary servitude and the imposition of criminal sanctions in civil proceedings, we think it proper for the trial judge in civil contempt proceedings to give consideration, in determining a defendant's ability to comply with an order for payment, to his earning capacity as well as his financial status and earnings history.

No costs and disbusements are to be taxed. We cannot understand the rationale of incurring the considerable expense for transcript, record, and brief involved in this appeal taken principally on the ground that defendant is unable to make the payments specified by the court.

Remanded for further proceedings.