In re the Marriage of James L. **TATRO**, petitioner, **Respondent**,

v.

Bonnie L. **TATRO**, **Appellant**.

No. C4–86–32.

Court of Appeals of Minnesota.

July 22, 1986.

**462**

Robert J. Phillips, Little Falls, for respondent.

Gregory K. Larson, Little Falls, for appellant.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

Bonnie Tatro appeals from an order of the Morrison County District Court denying her motion requesting the court to find her former husband, James Tatro, in contempt of court for violations of the dissolution decree. We affirm.

## FACTS

The parties' marriage was dissolved by a decree dated July 31, 1984. They had two children. Jodi was born in 1978 and Jenny was born in 1982. The parties owned 80 acres in Morrison County, where they lived and raised horses during the marriage.

James Tatro was awarded the buildings located on the parties' real estate, subject to Bonnie Tatro's right to compensation for certain buildings that were marital property. Bonnie Tatro was awarded sole occupancy of the residence and garage until both children attain majority, die or are emancipated. The decree provides:

> Each of the parties is allowed to exercise all rights of ownership on the property awarded to him or to her, free of and free from all claims by the other party as fully and effectively as though the parties had never been married, and neither party shall have any right, title or interest in or to any property or estate of the other party except as otherwise herein provided.

In an accompanying memorandum the court stated that the main concern of James Tatro was that he retain ownership of the land given him by his father, and that he be able to continue to raise his horses and farm. The court found that Bonnie Tatro's main concern was that she stay in her present home with her children and develop her day care service in the home.

The decree further awarded Bonnie Tatro the parties' share of Amway stocks and supplies. She was awarded the right of common pasture, feed and stabling of the horses awarded to her. Both parties were ordered to execute all documents necessary to carry out the transfers of property. The decree prohibits either party from doing any act to alienate the children from the other parent.

Appellant moved to find respondent in civil contempt for failure to abide by the terms of the decree by (1) moving onto the premises and alienating the children from appellant; (2) failing to provide a complete transfer of the Amway business and by the removal of the mailing address and business phone; and (3) failing to provide common stabling, pasturing and feed for appellant's horses.

A hearing was held in July 1985. Appellant testified that respondent moved a 60 foot mobile home onto the land adjoining the parties' homestead in September 1984, which he and his new wife use as their home. It is 75 feet from the homestead. Respondent stated in an affidavit that he would have to pay $650 a year more in

taxes if he could not live on the property. Additionally, he felt he needed to live on the premises to properly care for the horses.

Appellant and several others testified that respondent's presence has interfered with her relationship with the children. Counselor Margory Cole testified that respondent's presence caused appellant's stress which interfered with her relationship with the children. Dale Johnson, the principal at Jodi's school, also expressed the opinion that respondent's presence hampered the natural development of the love of the children for the parents. Appellant's friend and babysitter, Karen Jarvis, testified that respondent's presence interferes with appellant's relationship with Jodi. Respondent's witness, Darla Tatro, testified that she knew both parties well and that appellant seemed "devastated" and unhappy most of the time, a condition which interferes with appellant's relationship with the children. Two medical reports were submitted by Dr. Heid, both of which reflect the emotional stress experienced by Jodi after respondent moved onto the premises.

Appellant testified that her horses were not provided common stabling after October of 1984 when respondent removed her horses from the barn to a small pasture near the house. Appellant also complained that she did not have the continuous right to "common feed." She said she had to purchase her own feed and that her horses were also denied access to the common pasture. Respondent denied these allegations.

Respondent agreed that he failed to execute documents to transfer the Amway business to appellant. Respondent also admitted that he removed the parties' mailbox and gave appellant a substitute mailbox with a different address. He also removed the parties' phone line and had the phone company reassign another number to appellant. The original mailing address and phone number were advertised as the Amway address and phone number in the telephone book. Subsequently respondent's second wife became an Amway representative and conducted an Amway business using appellant's previous Amway phone number and address.

The trial court found that respondent was not in civil contempt of court, and ordered respondent to comply with the decree. The court ordered respondent to provide common stabling, pasturing and feed for appellant's horses, and pay her $300.00 as damages for his past failure to provide those items. Respondent was ordered to execute the necessary documents to transfer the Amway business. The court denied appellant's request that the mailing address and telephone number be restored. The court also denied appellant's motion that she be awarded the entire 80 acres.

The court refused to prohibit respondent from living on the 80 acre tract. Essentially the court found that respondent did not violate the decree by moving onto the land. The court clarified the parties' rights under the decree as follows:

> It is ordered that the term 'residence' as used in the Decree of Marriage Dissolution dated July 31, 1984 meant the home and a reasonable amount of real estate surrounding the same for residential use and the right of ingress and egress to the home and garage. It is ordered that the remainder of the real estate is for [respondent's] own use and enjoyment, subject to [appellant's] right of common pasturing and stabling for her horses.

On December 6, 1985, pursuant to the court order, respondent issued a check for $300.00 payable to appellant. She cashed the check on January 14, 1986.

## ISSUES

I.  Did appellant waive her right to appeal by cashing the $300 check?

II.  Did the trial court err by failing to make findings to support its order denying the contempt motion?

III.  Did the trial court abuse its discretion by declining to find respondent in civil contempt for his failure to comply with the dissolution decree?

## ANALYSIS

### I.

■ Respondent argues that appellant waived her right to appeal by cashing the $300 check. Respondent's theory is that by accepting even a partial satisfaction of a "judgment" in her favor, she waived her right to appeal. Partial satisfaction of a judgment does not prevent an appeal from being taken on unsettled and unsatisfied issues. *Chaney v. Lieberman,* 386 N.W.2d 355, 356–57 (Minn.Ct.App.1986). The check was intended to compensate appellant for her past damages resulting from respondent's failure to provide stabling and feed for her horses in violation of the decree. The fact that appellant cashed the check does not prevent her from appealing the court's denial of her contempt motion based on other alleged violations of the decree.

### II.

■ No findings were made by the court when it denied appellant's contempt motion. Findings on the defendant's ability to comply with the conditions of a contempt order are required when a contempt motion is granted. *Hopp v. Hopp,* 279 Minn. 170, 173, 156 N.W.2d 212, 215–16 (1968). Although findings would be helpful to a reviewing court, there is no requirement for findings when a contempt motion is denied.

### III.

The purpose of civil contempt proceedings in a dissolution setting is to secure future compliance of a court order by one party to vindicate the rights of the other party. *See Minnesota State Bar Association v. Divorce Assistance Association,* 311 Minn. 276, 285, 248 N.W.2d 733, 741 (1976). Civil contempt is not designed to punish a defendant for past misconduct in derogation of judicial authority. *Hopp,* 279 Minn. at 175, 156 N.W.2d at 217. The court has greater discretion in civil contempt cases than in criminal contempt cases. *Id.* at 174, 156 N.W.2d at 216.

The test whether a defendant should be found in civil contempt is (1) whether there was a failure to comply with a court order, and (2) if so, whether conditional confinement is reasonably likely to produce compliance fully or in part. *Id.* at 175, 156 N.W.2d at 217. Once disobedience of a court order is shown, a prima facie case of contempt is made. *See Meisner v. Meisner,* 220 Minn. 559, 560, 20 N.W.2d 486, 487 (1945). The burden is then on the person charged with contempt to show that it was not in his power to obey the order. *Id.*

■ The discretion afforded the trial court in this case is broad. By its clarification of the term residence, the trial court implicitly ruled that respondent did not violate the decree by moving onto the premises. Although it appears that respondent failed to comply with the divorce decree by his failure to transfer the Amway business, it is obvious that the trial court concluded that conditional confinement was not reasonably likely to produce compliance. Instead, the court fashioned its own remedies for each of the grievances raised by appellant. In view of the broad discretion afforded trial courts in civil contempt cases, we decline to overturn the court's ruling.

## DECISION

Appellant did not waive her right to appeal unsettled and unsatisfied issues by cashing a $300 check given her by respondent as damages for his past failure to provide her horses with common stabling, pasturing and feed. Findings are not required to support the trial court's denial of a civil contempt motion. The trial court acted within its broad discretion by refusing to find respondent in civil contempt.

Affirmed.