**In Re the MARRIAGE OF Laurel Jean LARSON, Petitioner, Respondent,**

**and**

**Loren Mark Larson, Appellant.**

**No. C7-86-1675.**

Court of Appeals of Minnesota.

June 23, 1987.

Review Denied Aug. 19, 1987.

 

Doris C. McKinnis, Patricia Callaghan, Minneapolis, for respondent.

Douglas A. Ruhland, Eden Valley, for appellant.

Heard, considered, and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Loren Mark Larson appeals from the amended judgment and decree, challenging the increase in his child support payment for one child from $150 to $390 per month, retroactive to August 15, 1984; the court's award of attorney's fees; and the apportionment of the cost of an expert witness. Also at issue are whether the court erred in ordering Larson to return a cash deposit which it had earlier released to him and whether the court's conditional contempt order is valid. We affirm in part and reverse in part.

## FACTS

This case is once again before us since we remanded in *Larson v. Larson*, 370 N.W.2d 40 (Minn.Ct.App.1985). In that decision, we determined that the trial court may have erred in computing Loren's net monthly income for purposes of setting child support. Based on its computation in that case, the trial court increased Loren's child support obligation from $150 to $430 per month. Loren appealed, arguing the trial court erred in basing his net income figure on income from his construction work without completely deducting his farm losses. We remanded the matter to the trial court to determine whether the farming operation is a hobby used to shelter Loren's income from construction work, or whether the farm is a longstanding, legitimate business, supplemented by the income from his construction work. *See id.* at 42–43. We suggested that an expert be used to aid the trial court in constructing a net income figure. The trial court appointed Clarence Anderson, an expert in

farm management, to review Loren's farming operation and to compile a net income figure.

At the evidentiary hearing, Loren testified that since he graduated from high school in 1971, he has worked seasonally in road construction, collecting unemployment during the winter months. He has received regular promotions and is currently a gravel foreman for Valley Paving in Shakopee. Loren has also, since 1971, been involved in farming, renting land, and planting crops. During the first few years, Loren considered the farming a hobby. In 1975, however, Loren entered into a partnership agreement with his father to assist in his father's dairy farming operation. They milk about 100 cows and Loren receives one-third of the monthly milk check. In addition to the dairy operation, Loren has in the past four years farmed in partnership with his brother. Loren considers his farming a business. Loren testified that he has an outside job so that he can get established in farming. Since 1975, Loren has hired additional help for the farming operation to replace him while he worked his construction job. He testified that he farms for the purpose of producing an income from the farm, that he is committed to farming, and that he hopes to become a fulltime dairy farmer. Loren has between $30,000 and $40,000 equity in the farming operation.

Clarence Anderson, the court-appointed expert, prepared a report of Loren's net income. He based his report on Loren's income tax returns, depreciation schedules, sales contracts and security agreements, answers to interrogatories, and interviews with Loren. Loren's tax returns show the farm has operated at a loss for several years. Based on his investigation of Loren's operation, Anderson testified that the farming operation was not a viable one. Anderson defined a viable farming operation as one that generates enough income to pay, in the following order of priority, basic family living expenses, property taxes, farm operating expenses, debt retirement, and new purchases. Anderson said that Loren would need to triple his farm receipts in order to obtain a positive cash flow.

Anderson determined Loren's net income based on a comparison of farm and wage income sources. Anderson also adjusted Loren's farm depreciation expenses to reflect a reasonable depreciation deduction. He then added the adjusted depreciation figure to the combined farm-wage income figure to arrive at Loren's annual net income from 1978 to 1985:

| Year | Combined wage-farming operation net income | Depreciation Adjustment | Net income |
|---|---|---|---|
| 1978 | $10,409 | $7,257 | $17,666 |
| 1979 | 9,864 | 7,910 | 17,774 |
| 1980 | 20,221 | 4,878 | 25,099 |
| 1981 | 6,059 | 8,896 | 14,955 |
| 1982 | 2,901 | 7,889 | 10,790 |
| 1983 | 10,287 | 7,392 | 17,679 |
| 1984 | (6,524) | 9,265 | 2,741 |
| 1985 | (2,849) | 8,541 | 5,692 |

Anderson testified that in the years 1981 through 1985 Loren's income after taxes from his construction job was more than his income from his farm-job combination.

The trial court found that, after taxes, Loren had more income available from his construction wages and unemployment compensation than from the combined farming-wages operation; that Loren would have had more income available to meet family expenses if he had not engaged in farming; that the farm's debts and expenses were not reasonably incurred in the generation of income for the support of his family; that if the marriage had not been dissolved, the family would have enjoyed a net monthly income of approximately $2,680; and that Loren's proven earning capacity made the original order of $150 per month for child support of one child unreasonable and unfair.

The court also ordered Loren to pay $4,000 of Laurel's attorney's fees, which were approximately $10,000. The court apportioned the cost of the expert, whose bill was $3,522, ordering Loren to pay two-thirds of the cost.

The court ordered that Loren have returned to him the $3,640 that he had deposited with the court, in lieu of a supersedeas bond, as security for any child support

arrearages which might accumulate during the first appeal. At a subsequent hearing, however, the court informed the parties that the order returning the deposit to Loren was a mistake. The court then ordered that the money be awarded to Laurel in partial payment for the arrearages that had accumulated from the time of the court's modified child support order in August 1984.

Meanwhile, Loren had not complied with the court order to begin paying $390 per month child support, although he continued to pay $150 per month. Laurel brought a motion to find Loren in contempt for failure to pay. The court found Loren in constructive civil contempt and sentenced him to 90 days in jail. The court stayed execution, however, and provided Loren the opportunity to purge himself of the contempt upon meeting several conditions.

## ISSUES

1. Did the trial court err in determining appellant's income and in ordering increased child support payments?

2. Did the trial court abuse its discretion in awarding $4,000 attorney's fees to respondent and in apportioning the cost of the expert witness?

3. Did the trial court err in ordering appellant to return the cash deposit that it had earlier released to him?

4. Is the order finding appellant in constructive civil contempt valid?

## ANALYSIS

■ 1. Trial courts have broad discretion to modify child support payments, and "an appellate court will reverse for an abuse of that discretion only where it finds a 'clearly erroneous conclusion that is against logic and the facts on record.'" *Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn.1986) (quoting *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984)). A child support obligation may be modified upon a showing of substantially increased need of a party which makes the original decree unreasonable or unfair. Minn.Stat. § 518.-64, subd. 2 (Supp.1985). In determining a child support obligation, the court must consider the financial resources of both parents and the standard of living the child would have enjoyed if the parents remained married. Minn.Stat. § 518.17, subd. 4 (1984) (current version at Minn.Stat. § 518.-551, subd. 5(b) (1986).[1]

Here, the parties stipulated to a change in circumstances, and the initial question before us is whether the trial court erred in determining Loren's net income and in setting his support obligation.

■ The trial court found that in 1984 Loren had the proven ability to earn more from his construction job alone than from his combined farm-job operation and that the farm expenses and debts were not reasonably incurred in the generation of income for the support of his family. A trial court may consider a party's earning capacity and earnings history to determine that party's ability to comply with child support orders. *See Hopp v. Hopp*, 279 Minn. 170, 177, 156 N.W.2d 212, 218 (1968). Any inability to pay which is voluntary on the part of the obligor may be disregarded. *Resch v. Resch*, 381 N.W.2d 460, 462 (Minn.Ct. App.1986). Noting that farming was Loren's personal choice and not a necessity, the trial court excluded the farm income and expenses in computing Loren's net income. The court advised Loren to liquidate his farming operation if he is suffering financial hardship.

In reaching its decision, the court focused on the volitional nature of Loren's efforts to establish a successful farming operation. In our earlier decision in this case, we did not discuss the significance of volition as it relates to the operation. Instead, we discussed the operation only in the context of its tax consequences. We noted that, if the farm is operated as a hobby and used only to shelter income

**1.** Although Minn.Stat. § 518.17, subds. 4 and 5 were repealed by 1986 Minn.Laws ch. 406, § 9, the factors therein were largely incorporated into Minn.Stat. § 518.551, subd. 5(b) (1986), effective date August 1, 1986. Since the initial hearing and the hearing on remand were held before repeal, Minn.Stat. § 518.17, subd. 4 still applies in this case.

from Loren's construction work, then the trial court could disregard the shelter effect in computing net income. *Larson*, 370 N.W.2d at 42. Although the farm has operated at a loss, the farm management expert specifically testified that Loren's farming operation is not a hobby or a tax shelter.

■ The trial court erred in relying exclusively on Loren's earning capacity, without considering his reasons for continuing to farm. Whether farming is a necessity or whether Loren has the proven ability to earn more from construction work are significant questions only to the extent that they bear upon the ultimate question of Loren's good faith in operating the farm. Good faith is the standard by which Loren's activity should be measured. *See Giesner v. Giesner*, 319 N.W.2d 718, 720 (Minn.1982).

In *Giesner*, the supreme court adopted a good faith standard in a case similar to the one before us. There, the obligor-father moved for a reduction in child support because he was earning less after entering a new business. He was involuntarily terminated from his previous employment and, after unsuccessful attempts to obtain work in his own field, he started a new business venture. The trial court refused to reduce his support, confirming a referee's decision that the father's "legal obligation is to secure immediate employment that will provide first for his basic necessities and secondly produce sufficient income for him to meet his child support and maintenance obligations." *Id.* at 719.

On appeal, the supreme court referred to the significance of volition as it concerns a party's ability to comply with a support order for contempt purposes, stating the rule that:

> there is no defense if the party directed to pay "has not made a reasonable effort by means of his own selection to conform to an order well within his inherent but unexercised capacities."

*Id.* at 719–20 (quoting *Hopp*, 279 Minn. at 176, 156 N.W.2d at 217). The court then adopted a similar test for the case before it, where a party seeks a modification of a

decree because a career change has resulted in decreased earnings. Remanding the matter for the trial court to evaluate the father's subjective intent in starting a new business, the court stated:

> If the trial court finds that the entry into the new business by the appellant was made in *good faith so that appellant might meet his obligations*, including his support and maintenance obligations, the court may then fashion a modification that will reflect equities for the parties and the child.

*Id.* at 720 (emphasis added).

Good faith is thus determined by whether the obligor's voluntary endeavor is calculated to meet his obligations. Although *Giesner* concerns new business ventures, the good faith standard is even more applicable in evaluating an obligor's income-generating activities where, as here, a party is not changing occupations, but is and has been for a number of years engaged in two occupations.

■ The evidence before us shows that Loren's efforts are all directed toward increasing his income. He has been farming seriously since 1975 when he entered into a partnership agreement with his father. The evidence indicates he works nearly 3,000 hours a year at his combined jobs and hopes eventually to farm fulltime. He testified that he works off the farm in order to get established in farming and that he farms for the purpose of producing an income from the farm.

The expert noted that many farming operations in the present economy need outside funds to meet cash flow and that Loren's operation depended on it. Based on his investigation of Loren's farming operation, the expert testified that Loren is not a hobby farmer, is not a poor manager, and has not operated his farm as a tax shelter, all of which bear upon the question of Loren's good faith in continuing to operate the farm.

Although Loren has a duty to commit a certain amount of income to his child as a priority over other expenses, *Letourneau v. Letourneau*, 350 N.W.2d 476, 478 (Minn.

Ct.App.1984), the issue is whether his current obligation of $150 per month should be increased. The overwhelming evidence is that, at this point, Loren has not voluntarily reduced his income to avoid his support obligation, nor has he operated the farm in less than good faith. *Cf. Juelfs v. Juelfs,* 359 N.W.2d 667, 670 (Minn.Ct.App.1984) (obligor-father was not entitled to reduced child support payments where he lacked good faith when he voluntarily left his longstanding employment to develop a business and was fully aware the business was inadequate to meet his needs and obligations), *pet. for rev. denied* (Minn. March 29, 1985).

Additionally, we note the expert's report of Loren's net income in the years before 1984, which is the subject year at issue here. The report shows that his income would have justified an increase in child support under the guidelines now in effect. *See* Minn.Stat. § 518.551, subd. 5 (1986). In 1984, however, his income dropped substantially, which is attributable to the crisis in the agricultural economy. The expert expressly noted the extreme difficulty many farms are currently experiencing in meeting cash flow. Although children are entitled to benefit from the income of the noncustodial parent, they should also "share in the hardship as they would have had the family remained together." *Giesner,* 319 N.W.2d at 720.

The downturn in the farm economy in 1984 and 1985 has caused financial problems not only for Loren, but also for many farming families. Under these circumstances, we do not believe the trial court is justified in advising Loren to liquidate his farming operation, where the operation has resulted in a dramatic decrease in Loren's net income for only the last two of the eight years represented in the expert's report. The expert predicted the farm economy would improve, and we note that Loren's net income has, in fact, increased modestly from $2,741 in 1984 to $5,692 in 1985. As the farm economy continues to improve, Loren's net income should also increase.

Good faith, however, does not depend on the vagaries of the farm economy, which may never improve enough to justify an increase in child support. Accordingly, although we decline to remand, we think that Loren's farming operation should be subject to periodic scrutiny by the trial court upon proper motion and that yearly review would be appropriate.

If Loren continues to farm in this adverse economic environment, knowing that the operation is depleting resources otherwise available for child support, then the trial court might justifiably conclude that his efforts are not reasonably directed toward generating income to meet his obligation, which evidences a lack of good faith. On the record before us, however, we believe the court abused its discretion by prematurely excluding the farm income and expenses in calculating net income. Based on the expert's report, Loren's net income in 1984 was $2,741, which cannot justify the trial court's order for increased child support.

■ 2. Loren also argues that the trial court abused its discretion in awarding Laurel $4,000 for attorney's fees and in apportioning the cost of the expert witness, ordering Loren to pay two-thirds of the cost. An award of attorney's fees in marriage dissolution actions brought under Minn.Stat. § 518.14, which also governs the assessment of costs, "rests almost entirely in the discretion of the trial court" and should not be disturbed absent a clear abuse of that discretion. *Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn.Ct.App.1984). Here, because of the unique fact situation, we find no abuse of the trial court's substantial discretion.

■ 3. Loren next argues that the trial court erred in ordering him to return the $3,640 cash deposit it had earlier released to him. Loren deposited the money in lieu of a supersedeas bond, as security for child support arrearages that might accumulate during the first appeal. Loren argues that the trial court lacked jurisdiction to award the money once it was released. Because we reverse the trial court's decision to increase child support payments, there are no arrearages. The question before us is moot.

4. Similarly, the question of the validity of the court's conditional order finding Loren in constructive civil contempt for failing to meet his increased child support obligation is also moot. Although a conditional contempt order is not appealable, *Becker v. Becker*, 300 Minn. 512, 513, 217 N.W.2d 849, 850 (1974), because we reverse the court's order increasing child support, any subsequent proceeding to enforce the contempt order is now meaningless.

## DECISION

The trial court's decision to award attorney's fees and to apportion the cost of the expert witness is affirmed. Its decision to increase child support payments from $150 to $390 per month is reversed.

Respondent's request for attorney's fees for this appeal is denied.

Affirmed in part and reversed in part.