**In Re the Marriage of Joan Karen KNUTSON, f/k/a Joan Karen Zenk, petitioner, Appellant,**

v.

**Daniel Karl ZENK, Respondent.**

**No. C0–87–684.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

Nancy Z. Berg, Minneapolis, for petitioner, appellant.

Judith L. Oakes, J. Oakes & Associates, St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN,* JJ.

## OPINION

NORTON, Judge.

Respondent Daniel Zenk served appellant Joan Knutson with an order to show cause on December 12, 1986, alleging appellant violated the visitation provision of a marriage dissolution judgment. In response, appellant brought a motion requesting suspension or, alternatively, supervision of respondent's visitation rights. The trial court heard the motion in a three-day evidentiary hearing. The court then granted respondent two weeks of "makeup" visitation, which it found appellant had wrongfully withheld from him, and ordered only minimal supervision of respondent's visitation. The trial court orally denied appellant's motion for a new trial. Joan Knutson appealed. *See Angelos v. Angelos*, 367 N.W.2d 518, 520 (Minn.1985) (orders denying or granting modifications of visitation are appealable as of right). Respondent moved for bad faith attorney fees. In a July 29, 1987 order, this court deferred the

issue of fees for consideration with the merits. We remand.

## FACTS

Appellant, Joan Knutson, f/k/a Joan Zenk, and respondent, Daniel Zenk, were divorced on July 29, 1985. Appellant was awarded sole legal and physical custody of the parties' three and one-half year old child, G.Z., subject to respondent's right to reasonable visitation.

Within three months, respondent returned to court with a motion alleging interference by appellant with the prescribed visitation. An order was issued on January 15, 1986, denying respondent's application for a finding of contempt against appellant and for various modifications to the judgment and decree. That order was amended on July 3, 1986, to permit the parties to mediate their differences through Washington County Court Services. Mediation progressed until November 1986.

Of central importance are the events that took place during one weekend in November. Respondent had his scheduled visitation from Friday, November 14, 1986, at 5:00 p.m., through Sunday, November 16, 1986, at 6:00 p.m. Sometime during that time, appellant claims, respondent sexually abused G.Z.

Appellant's mother-in-law, Marianne Mullen, testified that she had been taking care of G.Z. while appellant was hospitalized for back surgery prior to the weekend at issue. She testified at trial that the child was healthy immediately prior to her visit with respondent. The day after G.Z. returned from her visit, she complained to Marianne Mullen and Mark Mullen, appellant's current husband, of incontinence and soreness in her perineal area. G.Z. complained about pain when she urinated. Later in the day G.Z. said the pain started "at Dan's house" when she was "playing," and that "Dan touched me there," indicating her perineal area. Marianne Mullen, a registered nurse, examined her. She noticed G.Z.'s entire genital area was red and swollen.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

The following morning Marianne Mullen had G.Z. examined by Dr. Joel Jensen. (Dr. Jensen did not testify at the hearing, however, Marianne Mullen recounted his findings.) The redness had diminished, but G.Z. was running a low grade fever. Dr. Jensen stated his diagnosis in a letter dated November 28, 1986, attached and incorporated into an affidavit submitted to the court by appellant. Dr. Jensen reported the hymenal ring was intact. He concluded she had a urinary tract infection, caused by E. Coli, an organism found in feces.

Appellant reported the suspected abuse to the Washington County Child Protection Services. G.Z. was interviewed by a Child Protection Services worker, Joanne Flint, and by Dr. Carolyn J. Levitt and Dr. Sandra K. Hewitt. Appellant was not present during these interviews. Flint's assessment was summarized in a report:

> I asked [G.Z.] why she went to the doctor. She was looking at her shelf [sic] and said, "Because it hurt down there and it still hurts a little." I asked why it hurt her and she said "Cuz Dan rubbed me down there fast." She demonstrated with her right hand in a tickling motion over her vaginal area. I asked what she was wearing and she said "nothing." I asked why and she said "Dan took them off." I asked why and she said "so he could tickle me down there." I asked where it happened and [G.Z.] said "in my bedroom." When I asked where in her bedroom she said, "on the floor." I asked [G.Z.] to show me again on Benny her doll where Dan touched her and she tickled the doll in the crotch.

Despite this report, Child Protection Services determined that "absent further information," they could not substantiate the sexual abuse claim because "although there were sufficient indications of possible sexual abuse, the explanation offered by Mr. Zenk in conjunction with [G.Z.'s] symptoms, were sufficient to provide a likely causation for [G.Z.'s] infection and her report of Dan touching her in her pubic area."

Both doctors who examined G.Z., however, believe she was sexually abused. Dr. Carolyn J. Levitt, M.D., a child sex abuse expert at the Midwest Children's Resource Center at Children's Hospital in St. Paul, interviewed G.Z. on December 15, 1986. She testified that G.Z. stated that "Dan hurt this right here," indicating her genital area"; that she said he "rubbed her real fast," "real fast and put his finger in there," "put his hands in there, his little finger"; that it made her feel "bad," that "one day * * * he was tickling me real fast." Dr. Levitt asked G.Z., "What made it sting?," and G.Z. replied, "Dan tickled me real fast down there." G.Z. told Dr. Levitt that respondent "tickled and pinched me down there," without her underpants and while she was lying on a bed. When asked where she was touched, G.Z. pointed to her genital area, and said "right here"; G.Z. spontaneously demonstrated with her hand by holding it about an inch off the genital area and moving it in a circular motion. Dr. Levitt noted that G.Z. had some labial adhesions and soreness, but that the vaginal vault appeared normal. As part of her examination, Dr. Levitt touched G.Z. various places with her glove and asked G.Z. if she remembered Dan touching her there. G.Z. said Dan touched her clitoris and her vaginal opening, but not her anal area. Dr. Levitt prepared a report in which she stated: "It is my opinion that she should be protected from unsupervised visits with her father, Dan, because he is abusing her during these visits."

Dr. Sandra K. Hewitt, a psychologist for the Midwest Children's Resource Center, also specializes in abused children. She interviewed G.Z. in January 1987. In part, Dr. Hewitt testified that G.Z. put her hand between her crotch and said "he tickled me real fast down there," referring to respondent. In Dr. Hewitt's opinion, G.Z. has been touched inappropriately in her genital area by respondent. Dr. Hewitt wrote a letter summarizing her psychological evaluations, in which she stated:

> It is my professional opinion that [G.Z.] has been touched in the crotch area by her biological father Dan. [G.Z.] is a bright child with no sign of any handicapping condition that would impair her

memory for events or their recall. [G.Z.'s] testing reveals a very threatening view of males not described as father and a clearly negative relationship with Dan.

Dr. Robert ten Bensel, M.D., testified on behalf of respondent. Dr. ten Bensel is professor of public health and pediatrics at the University of Minnesota and an expert in child abuse. He did not examine or interview G.Z. Instead, he reviewed the reports of the various professionals who had examined or interviewed the child. Dr. ten Bensel concluded that the "medical evidence on this child is consistent with a urinary tract infection." He apparently felt that the infection was a direct result of respondent's improper wiping of G.Z.'s bottom. He testified that pain, the most reliable symptom of sexual abuse, occurs at the time of the injury, not a day later; that burning is a classic symptom of urinary tract infection and not sexual abuse; that he has never heard of an association between rubbing or masturbation and urinary tract infections; that labial adhesions are normal in a child G.Z.'s age, and they would have been broken if there was any kind of penetration or vigorous rubbing.

No testimony was elicited from Dr. ten Bensel to explain the child's spontaneous reports of respondent "hurting" her or touching her in the genital area by "pinching or tickling her." Dr. ten Bensel did not comment on G.Z.'s own description of the weekend events. He limited his opinion to purely physical evidence and failed to account for the child's statements. Appellant's attorney tried to probe this point at the hearing, but the trial court sustained an objection by respondent's attorney.

Respondent's other expert witness was Bruce Bobbitt, Ph.D., a psychologist with the Washington County Child and Adolescent Outpatient Program. Bobbitt had previously interviewed members of the Zenk family and conducted a psychological evaluation of the child as required by an earlier visitation order. Bobbitt was not asked to evaluate the child to determine whether or not sexual abuse occurred. Hence, his opinion did not take into consideration the allegations of child abuse.

The trial court made the following findings:

Respondent has inappropriately touched his minor daughter's private parts; however, this evidence does not establish or amount to the Court finding sexual abuse, hence, there is no specific finding that the Respondent here has perpetrated sexual abuse upon his daughter during the period of the weekend of 11/13 through the 16th, 1986. Therefore, the Court does not find that the child is in danger and that the child's visitation with the father should be prohibited.

Now, in this finding, the Court is relying on all of the facts but specifically relying on all the evidence and conclusions of the Washington County Human Services Department, their investigation, and upon the doctors that have testified, including Dr. ten Bensel. Through their detailed and lengthy investigations, examinations, and conclusions, the Court is convinced that there is no clear danger to this child while in the care of the natural father.

Visitation was limited by the court as follows:

Washington County Social Services shall have the duty and responsibility to monitor the Respondent's visitation at least once monthly and report, in writing, to this Court all suspicious facts or inappropriate sexual contact. Also, the Respondent shall give full consideration to this effort.

Additionally, respondent was ordered to apply to Washington County Human Services, Inc. for "ongoing appropriate father-daughter counseling, primarily concerned with their sexuality."

## ISSUES

I. Should the appeal be dismissed for appellant's failure to file a timely brief?

II. Did the trial court err by finding that respondent inappropriately touched his daughter but that the

touching was not sexual abuse for purposes of visitation rights?

III. Did the trial court err in staying the consequences of appellant's contempt of court?

## ANALYSIS

### I.

Respondent argues the appeal should be dismissed because appellant filed her brief one day late. Appellants must serve and file their briefs and appendices within 30 days after delivery of the transcript by the court reporter. Minn.R.Civ. App.P. 131.01. Failure to file a timely brief is not a jurisdictional defect. *Progressive Casualty Ins. Co. v. Kraayenbrink*, 365 N.W.2d 229, 231 (Minn.1985). Four factors should be weighed upon consideration of a motion to dismiss for failure to timely file a brief:

1. Has the movant been prejudiced by the appellant's failure to comply with the rules?

2. Has the appellant demonstrated justifiable cause for the failure to comply with the rules?

3. Has the defect been cured and have the record and all briefs been filed so that the merits can be evaluated?

4. Is the underlying appeal meritorious?

*Id.* (quoting *Boom v. Boom*, 361 N.W.2d 34, 36 (Minn.1985)).

We conclude this appeal should not be dismissed. Respondent's attorney admitted at oral argument that her client has not been prejudiced by appellant's late filing. Also, the record is complete and the appeal raises legitimate questions.

### II.

A trial court's finding of fact will not be overturned unless clearly erroneous. Minn.R.Civ.P. 52.01. Findings are clearly erroneous where the appellate court is left with the " 'definite and firm conviction that a mistake has been committed.' " *E.g., In Re Balafas v. Angelos*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972) (quoting *United States v. Oregon State Medical Society*,

343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952)). Due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. Additionally, the evidence is to be viewed in favor of respondent. *Theisen's Inc. v. Red Owl Stores, Inc.*, 309 Minn. 60, 66, 243 N.W.2d 145, 149 (1976).

Keeping in mind these standards, it is our determination that this case must be remanded. The trial court's finding that respondent did inappropriately touch his daughter's private parts but that it does not amount to sexual abuse is ambiguous. These are really two separate findings. We are compelled to remand for clarification of the term "inappropriate touching," as used by the trial court. If the trial court meant the touching was sexual in nature, beyond normal parenting duties, then its finding that the touching was not sexual abuse is contradictory and clearly erroneous. Also contradictory are findings that inappropriate touching of a child's private parts does not endanger a child. These findings leave us with the firm conviction that a mistake has been made. Furthermore, visitation rights need be granted only to the extent that will enable the noncustodial parent to "maintain a child to parent relationship that will be in the best interests of the child." Minn.Stat. § 518.-175, subd. 1 (1986). Where visitation is:

likely to endanger the child's physical or emotional health or impair the child's emotional development, the court may restrict visitation by the noncustodial parent as to time, place, duration, or supervision and may deny visitation entirely, as the circumstances warrant.

*Id.* Thus, if respondent's "inappropriate touching" was of a sexual nature, the best interests of the child clearly call for ongoing supervision of visitation, at the minimum.

### III.

Respondent argues the trial court should have punished appellant when it found she was in contempt for willfully violating the court-ordered visitation sched-

ule. Punishment is not the purpose of a court's civil contempt powers:

> In exercising civil contempt powers in divorce cases, the only objective is to secure compliance with an order presumed to be reasonable. *Punishment for past misconduct is not involved; that is a field reserved to criminal proceedings of which criminal contempt is one example.*

*Hopp v. Hopp*, 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968) (emphasis in original); *Tatro v. Tatro*, 390 N.W.2d 461, 464 (Minn.Ct.App.1986). The court is "free to compel performance by methods which are speedy, efficient, and sufficiently flexible to meet the problem at hand." *Hopp*, 279 Minn. at 174, 156 N.W.2d at 216.

■ Respondent also sought bad faith attorney fees. Fees may be awarded where an attorney or party has brought a frivolous or unfounded argument that is costly to the other party, or asserts a claim solely to delay the proceedings or harass the other party. Minn.Stat. § 549.21, subd. 2 (1986). Appellant's arguments are meritorious. Accordingly, respondent's motion for attorney fees for this appeal is denied.

### DECISION

Respondent has not shown that this appeal should be dismissed for appellant's failure to timely file her brief.

On remand, the trial court must clarify what it meant by "inappropriate touching." If the touching was beyond normal parenting duties, the court clearly erred by finding that it did not amount to sexual abuse that endangers a child's wellbeing and by permitting unsupervised visitation.

The trial court did not abuse its discretion in staying the consequences of contempt.

Respondent is not entitled to bad faith attorney fees.

Remanded.