*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1900**

In re the Marriage of: Dawn Angela Swenson, petitioner,
Respondent,

vs.

Shawn Anthony Pedri,
Appellant,
County of Dakota, intervenor,
Respondent.

**Filed September 6, 2016**
**Affirmed**
**Stauber, Judge**

Dakota County District Court
File No. 19AV-FA-10-644

Dawn A. Swenson, Mendota Heights, Minnesota (pro se respondent)

Paul P. Sarratori, Mesenbourg & Sarratori Law Offices, P.A., Coon Rapids, Minnesota (for appellant)

James Backstrom, Dakota County Attorney, James W. Donehower, Assistant County Attorney, Hastings, Minnesota (for respondent Dakota County)

Considered and decided by Stauber, Presiding Judge; Reyes, Judge; and Jesson, Judge.

**STAUBER**, Judge

In this parenting-time and child-support dispute, appellant-father challenges the district court's orders denying his motions for contempt, to compel discovery, for adjustment of respondent-mother's imputed income, and for conduct-based attorney fees, and the district court's orders appointing a guardian ad litem and reapportioning fees for a parenting-time expeditor. We affirm.

## FACTS

Appellant-father Shawn Anthony Pedri and respondent-mother Dawn Angela Swenson were married in 2004. The parties' marriage was dissolved in 2011. The parties have two children. Under the terms of the dissolution judgment and decree, the parties were awarded joint legal and physical custody, but appellant's home is designated as the children's primary residence.

The parties' dissolution was contentious, particularly as to custody issues, and this relationship has continued since the dissolution. The parties have returned to court several times, filing motions for contempt and seeking changes in parenting and holiday time, and requesting orders requiring respondent to take the children to scheduled activities and to refrain from smoking, increasing child support, compelling discovery about finances, providing for income withholding, and mandating health-insurance coverage. In January 2013, the district court ordered the parties to engage in nonbinding arbitration before returning to the court. The district court has also appointed a series of parenting consultants or parenting-time expeditors (PTE) to deal with parenting-time

disputes. The January 2013 district court order addressed issues similar to those now before this court.

On August 28, 2015, appellant moved the district court for an order to hold respondent in contempt, modify parenting time, appoint a PTE, require respondent to submit to hair follicle testing for drugs, increase respondent's imputed income, modify child support, compel respondent to disclose financial information, and require respondent to pay his attorney fees. Respondent filed a responsive motion, asking that appellant be held in contempt and that the district court deny all of appellant's motions.

In its order addressing appellant's motion, the district court commented that

> both parties raised issues previously brought before this Court, including but not limited to the following: enrollment in activities; use of the Our Family Wizard; [respondent's] employment; derogatory statements; communication regarding the children's attendance at school, social, and sporting events; parenting time pick-ups and drop-offs; communication with the children on non-parenting time days; access to information regarding travel and activities; the children's performance in school; medical appointments; vacation and parenting time; and medical insurance coverage.

The district court reviewed the history of disagreements between the parties, which covered five pages of the order. During the hearing, the district court was able to prompt the parties to agree on certain issues; the district court denied the motions for contempt and ordered respondent to continue to be responsible for 23% of the children's activity fees and medical costs, but reduced respondent's responsibility for PTE costs from 50%

to 23%, her PICS percentage.[1]  Because respondent owed appellant for unreimbursed activity fees and medical costs, the district court ordered her to pay $200 per month on the $7,600 balance.  The district court ordered the parties to (1) use Our Family Wizard, a communications system, check it every day, and respond within 24 hours; (2) provide each other with contact, travel, and teacher/coach/instructor information; and (3) sign up for a parenting course.  Respondent was ordered to produce her 2014 W2 forms and paystubs for a 12-month period.  The district court denied motions to modify child support, medical coverage, and parenting time, and refused to order conduct-based attorney fees.  The district court appointed a new PTE and also granted respondent's request for appointment of a guardian ad litem (GAL).  The district court subsequently denied appellant's motion to modify or amend the findings.  Appellant appeals from both of these orders.

## DECISION

## I.

Appellant argues that the district court abused its discretion by refusing to hold respondent in contempt.  We review the district court's decision on whether to invoke its contempt power for an abuse of discretion.  *In re Marriage of Crockarell*, 631 N.W.2d 829, 833 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001).  "In exercising civil

---

[1] The PICS percentage is determined by calculating "[p]arental income for determining child support" (PICS) of each parent, combining the two PICS, and dividing each parent's PICS by the combined total to calculate a percentage.  Minn. Stat. §§ 518A.26, subd. 15, .34 (2014).  This percentage is used to calculate the child support each parent is obligated to pay, as well as other financial obligations.

4

contempt powers in divorce cases, the only objective is to secure compliance with an order presumed to be reasonable." *Hopp v. Hopp*, 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968). Because civil contempt is intended "to make the rights of one individual as against another meaningful," the court must be "free to compel performance by methods which are speedy, efficient, and sufficiently flexible." *Id.* at 174; 156 N.W.2d at 216. The supreme court recognized that in civil contempt, the district court "has a measure of authority and discretion . . . far in excess of that which exists in criminal cases." *Id.*

Our review of the district court's order and the appellate record supports our conclusion that the district court exercised its discretion in an appropriate manner by issuing orders calculated to resolve the continuing disputes between these two parties, which ultimately may be more effective than finding either party in contempt.

**II.**

Appellant asserts that the district court abused its discretion by refusing to compel discovery of respondent's new husband's financial information and credit-card statements. "The district court has broad discretion in granting or denying discovery requests. Absent a clear abuse of discretion, the district court's decision regarding discovery will not be disturbed." *Dunham v. Roer*, 708 N.W.2d 552, 572 (Minn. App. 2006) (citation and quotation omitted), *review denied* (Minn. Mar. 28, 2006).

Appellant's request to know respondent's husband's financial circumstances or whether he is supporting her is irrelevant; gross income for purposes of calculating child support "does not include the income of the obligor's spouse and the obligee's spouse."

Minn. Stat. § 518A.29(f) (2014).  The district court properly limited appellant's discovery request to respondent's 2014 W2 forms and a year's worth of paystubs.

## III.

Appellant argues that the district court abused its discretion by appointing a GAL instead of re-appointing Dr. Gilbertson, who performed the original parenting evaluation. We review the district court's decision to appoint a guardian ad litem for an abuse of discretion when there are no allegations of domestic child abuse or neglect.  *Reed v. Albaaj*, 723 N.W.2d 50, 59 (Minn. App. 2006); *see* Minn. Stat. § 518.165, subds. 1, 2 (2014) (stating that appointment of a GAL is permissive unless domestic child abuse or neglect is alleged).  Appellant states that respondent refused to agree to another parenting evaluation with Dr. Gilbertson because he was too "expensive," and labelled respondent's statement as "disingenuous" because appellant paid the fee.  But respondent also stated at the hearing that she spoke with Dr. Gilbertson, "he does not take on cases that he's already evaluated and closed," is not a PTE, and does not provide parenting consultant services.  Appellant has cited no basis or authority for asking the district court to dismiss the GAL.  In light of the continuing disputes between the parties, the district court's decision to appoint a GAL was not an abuse of discretion.

## IV.

Appellant argues that the district court erred by not increasing the amount of income imputed to respondent for purposes of determining child support.  In the 2011 judgment and decree, the district court found that respondent was employed part-time but

6

imputed full-time income of $32,000 per year to respondent based on "her highest yearly wage when she was employed full-time during the marriage."

Child-support obligations are based on the parents' gross income as computed under Minn. Stat. § 518A.34 (2014). "Gross income" includes "potential income under section 518A.32." Minn. Stat. § 518A.29(a) (2014). Section 518A.32 creates a rebuttable presumption that "a parent can be gainfully employed on a full-time basis." Minn. Stat. § 518A.32, subd. 1 (2014). If a parent is voluntarily unemployed, underemployed, or employed on a less than full-time basis, the district court may impute income based on one of three methods: (1) probable earnings based on experience, potential, and occupational qualifications; (2) the amount of unemployment or workers' compensation a parent is receiving; or (3) an amount of income equal to 150% of the current federal or state minimum wage. Minn. Stat. § 518A.32, subd. 2 (2014); *see Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015), *review denied* (Minn. Dec. 15, 2015). A district court's findings on imputed income must be based in fact and not clearly erroneous. *Id.*

The district court used the first method, relying on respondent's earnings at her last full-time job. This method is appropriate and supported by record evidence. In *Newstrand*, the father-obligor had previously earned $850 per week as a drywall taper; despite this and his avowed intention to limit his income to avoid paying child support, this court affirmed the district court's imputation of income based on the federal minimum wage, even though it was far less than his previous earnings. *Id.* at 685-86.

7

Appellant asks that the district court be ordered to "allow an evidentiary hearing once the requested discovery is provided to determine the accurate amount of [r]espondent's imputed income." The essence of imputed income is that there is not an accurate amount of actual income and, therefore, the district court must use one of the three methods to impute income to an obligor, which the district court did.

## V.

Appellant argues that the district court abused its discretion by changing respondent's responsibility for PTE fees from a 50/50 split of fees to a split based on her PICS percentage or 23%. The district court may appoint a PTE to resolve parenting time disputes. Minn. Stat. § 518.1751, subd. 1 (2014). When a court does so, it "shall apportion the fees of the expeditor among the parties, with each party bearing the portion of fees that the court determines is just and equitable under the circumstances." *Id.*, subd. 2a (2014). "After fees are incurred, a party may by motion request that the fees be reapportioned on equitable grounds. The court may consider the resources of the parties, the nature of the dispute, and whether a party acted in bad faith." *Id.*

Although appellant argues that the court acted sua sponte, respondent, in a pro se motion and memorandum, described the parties' experience with nonbinding arbitration and PTEs as "financially exhausting and burdensome." This provided a basis for the district court to consider how fees should be "reapportioned on equitable grounds." The district court's findings reflect the fact that the parties had employed four PTEs and engaged in fruitless nonbinding arbitration. The district court's division of fees based on the PICS percentages is supported by record and is not an abuse of discretion.

8

Appellant also argues that the district court abused its discretion by implementing a reimbursement payment plan. The district court's order does not disclose why it chose to implement a payment plan, but appellant asked for reimbursement for past expenses and the district court exercised its discretion in setting up a method to encourage payment of past-due reimbursement. We discern no abuse of discretion.

## VI.

Finally, appellant argues that the district court abused its discretion by denying his motion for conduct-related attorney fees for this proceeding. The district court may require a party who "unreasonably contributes to the length or expense of [a] proceeding" to pay attorney fees to the other party. Minn. Stat. § 518.14, subd. 1 (2014). The party requesting an award of conduct-based attorney fees has the burden of establishing that the other party's conduct contributed to the length or expense of the proceedings. *Geske v. Marcolina*, 624 N.W.2d 813, 818 (Minn. App. 2001).

We review the district court's decision on whether to award conduct-based attorney fees for an abuse of discretion. *Brodsky v. Brodsky*, 733 N.W.2d 471, 476 (Minn. App. 2007). A review of the record suggests that both parties, but particularly appellant, have engaged in tactics that contributed to the expense of the proceeding. The district court did not abuse its discretion by declining to award attorney fees.

**Affirmed.**