**In re the CONTEMPT OF James Kristjen ARMENTROUT.**

No. C6–91–1505.

Court of Appeals of Minnesota.

Feb. 4, 1992.

Robert R. Remark, Fertile, for appellant.

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI,

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Wayne H. Swanson, Polk County Atty., Crookston, for respondent.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY *, JJ.

## OPINION

PETERSON, Judge.

James Armentrout appeals from an order finding him guilty of four acts of criminal contempt for refusing to answer questions while serving as a witness in a criminal trial. He was sentenced to 90 days for each contempt with the sentences served consecutively to each other and to any prison sentence Armentrout was serving at the time. Armentrout appeals the finding of contempt and the sentence. We reverse three of the contempt convictions, affirm one of the contempt convictions and remand for resentencing.

## FACTS

James Armentrout was called by the state as a witness in the robbery trial of Richard James Kramchuck. During direct examination, Armentrout acknowledged that he was acquainted with Kramchuck and identified Kramchuck in the courtroom. Armentrout also stated that he had entered a plea of guilty on a variety of charges that involved the armed robbery of the VFW Club in East Grand Forks on October 17, 1988. He stated further that he gave a statement concerning the robbery to detective Rick Blazek on January 30, 1991, and that he was, in fact, involved in the commission of the robbery.

The following exchange then occurred:

Q. And was there another person involved with you in the commission of that robbery?

A. Yes, sir.

Q. And who was the other person that was involved with you?

A. I do not wish to say.

§ 2.

Q. Have you said on previous occasions who that other person was?

[Defense counsel]: Objection, your Honor.

THE COURT: Overruled

Q. Have you said on previous occasions who that person was?

A. I do not wish to say.

The trial court then took a recess, excused the jury, and informed Armentrout that he had no legal reason not to answer the question. The trial court warned Armentrout that if he continued to refuse to answer the question he would be found in contempt and punished. Armentrout's refusal continued and the trial court found him in contempt of court and sentenced him to 90 days consecutive to the prison term he was serving at the time.

Armentrout was then permitted to consult with an attorney. When direct examination resumed, the following exchange occurred:

Q. Mr. Armentrout, you've already identified Richard James Kramchuck, Jr., the defendant in this matter. How often have you been in contact with him, let's say over the past two months?

A. I have nothing further to say.

Q. Have you been in contact with him on a regular basis?

A. I have nothing futher to say.

Q. Will you identify the person who was involved with you in the armed robbery on October 17 of 1988?

A. I have nothing further to say.

The transcript of Armentrout's guilty plea hearing was then read to the jury and a tape recording of the statement he gave to detective Blazek was played to the jury. During the plea hearing, and in his statement to Blazek, Armentrout identified Kramchuck as the person who participated with him in the robbery of the VFW Club on October 17, 1988.

During cross examination of Armentrout the following exchanges occurred:

Q. The armed robbery in North Dakota at the Southgate Bar, Mr. Kramchuck was not your partner in crime in that episode, was he?

A. No, sir.

Q. And isn't it true that he was not your partner in crime in this episode at the VFW in East Grand Forks on October 17, 1988?

A. I have nothing further to say.

\* \* \* \* \* \*

Q. Isn't it true that when you gave this statement on January 30th, '91 and when you pled guilty in April, that you said that it was Mr. Kramchuck as your partner in crime because you did not want to disclose the real partner in crime?

A. I have nothing further to say.

\* \* \* \* \* \*

Q. Isn't it true that you're afraid to disclose your real partner in crime?

A. I have nothing further to say.

\* \* \* \* \* \*

Q. Isn't it true that yesterday you met with detective Blazek?

A. Yes, sir.

Q. And isn't it true that he put some pressure on you to testify in this matter?

A. Yes, sir.

Q. Did he hold out certain promises to you if you would testify?

A. No, sir.

Q. Did he make certain threats to you if you didn't testify?

A. I have nothing further to say.

Finally, during recross examination of Armentrout, the following exchange occurred:

Q. Mr. Armentrout, who committed this crime with you on October 17, 1988 at the VFW in East Grand Forks at 3 o'clock in the morning?

A. I have nothing further to say.

The trial court found that Armentrout refused to answer questions on four separate occasions during his testimony. For each occasion, Armentrout was found in contempt and sentenced to 90 days, to be served consecutively.

## ISSUE

Did the trial court err in finding Armentrout guilty of four acts of criminal contempt?

## ANALYSIS

■ This court may reverse or modify a contempt order only if there was an abuse of discretion by the trial court. *In re Marriage of Nelson,* 408 N.W.2d 618, 621 (Minn.App.1987).

Acts of contempt are classified in two different ways. First, contempt is either civil or criminal. Second, contempt is either direct or constructive. *See In re Welfare of E.J.B.,* 466 N.W.2d 768 (Minn.App. 1991).

Whether contempt is civil or criminal is determined by the court's purpose in responding to alleged misconduct, rather than the nature of the misconduct itself. The purpose of civil contempt is to coerce future compliance by imposition of a sanction of indefinite duration terminable on compliance or inability to comply. Criminal contempt is to preserve the authority of the court by punishing past misconduct. Usually this is done through an unconditional and fixed sentence.

*In re Welfare of A.W.,* 399 N.W.2d 223, 225 (Minn.App.1987) (citations omitted).

■ The contempt in issue here is criminal contempt. Although Armentrout had the ability to avoid the findings of contempt by responding to the questions he was asked, the trial court found him in contempt only after he refused to answer. The findings of contempt served to preserve the authority of the court by punishing Armentrout's past refusals to answer questions, not to coerce answers to future questions.

Also, Minn.Stat. § 588.20(6) (1990) defines criminal contempt to include a "contumacious and unlawful refusal to be sworn as a witness, or, after being sworn, to answer any legal and proper interrogatory." Armentrout's conduct falls within this definition.

■ Whether contempt is direct or constructive depends upon who witnesses the contempt and has personal knowledge of it. Direct contempt occurs in the immediate view and presence of the court. Minn.Stat. § 588.01, subd. 2(1) (1990). Minn.Stat. § 588.01, subd. 3 (1990) defines constructive contempt as contempt that is not committed in the immediate presence of the court and of which the court has no personal knowledge.

Direct contempt may be punished summarily by issuing an order

reciting the facts as occurring in the immediate view and presence of the court or officer, and adjudging the person proceeded against to be guilty of a contempt, and that the person be punished as therein specified.

Minn.Stat. § 588.03 (1990).

The acts for which Armentrout was found in contempt were all committed in the presence of the trial court. The trial court order meets the requirements of the summary procedure provided by section 588.03.

■ Appellant argues that his multiple refusals to answer questions constituted one act of contempt. Appellant contends he had carved out one area of refusal not subject to multiple charges of contempt.

In *Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957), Oleta Yates, testifying in her own defense at a joint trial for conspiracy to violate the Smith Act, refused to answer eleven questions that called for her to identify nine other people as communists. The stated ground for refusing to answer was Yates' belief "that either the person named or his family could 'be hurt by' such testimony." *Id.* at 69, 78 S.Ct. at 131. After conviction and sentencing in the conspiracy case, the trial court found Yates guilty of eleven separate criminal contempts and imposed eleven concurrent sentences of one year each to be served upon the expiration of the sentence imposed for the conspiracy conviction.

On appeal, Yates contended that her refusals constituted a single contempt be-

cause the questions asked all related to identification of others as communists, after she made it clear that she would not be an informer.

The United States Supreme Court agreed that Yates committed only one contempt and reversed ten of the convictions. *Id.* at 76, 78 S.Ct. at 134. The court determined that finding a separate contempt for each refusal constituted an improper multiplication of contempts because Yates had "carved out an area of refusal" by stating that she would not identify others as communists. Although the eleven questions covered more than a single subject of inquiry, every question fell within the area of refusal. *Id.* at 73, 78 S.Ct. at 133.

The Supreme Court reasoned that a witness who flatly refuses to answer any questions is guilty of a single contempt; therefore, as a matter of policy

a witness willing to testify as to all areas of investigation but one, should not be subject to more numerous charges of contempt than a witness unwilling to give any testimony at all.

*Id.*

Justice Douglas noted in his concurring opinion:

where the separate questions seek to establish but a single fact, or relate to but a single subject of inquiry, only one penalty for contempt may be imposed.

*Id.* at 78, 78 S.Ct. at 135 (quoting *United States v. Orman*, 207 F.2d 148, 160 (3d Cir.1953)).

The separate questions appellant refused to answer all addressed a single subject of inquiry. Appellant refused to answer only those questions that were intended, in one way or another, to identify his accomplice in the VFW robbery. Although the questions were phrased differently and were intended to gather slightly different pieces of information, the purpose of each question was to establish that Kramchuck was appellant's accomplice.

Respondent attempts to distinguish *Yates* by arguing that it was not the prosecutor in this case who multiplied the contempts by repeating questions on the same subject. This distinction is not significant

because appellant's refusals to answer questions asked by defense counsel were within the same area of refusal as his refusals to answer questions asked by the prosecutor. The purpose of criminal contempt is to vindicate the authority of the court. Refusing to answer a legal and proper question defies the authority of the court whether the question was asked by a prosecutor or defense counsel. The fact that appellant refused to answer questions asked by both the prosecutor and defense counsel does not change the court's purpose in finding appellant in contempt.

In *Yates*, the supreme court remanded for resentencing on the single remaining contempt because:

[w]hile the sentences imposed were concurrent, it may be that the [trial] court's judgment as to the proper penalty was affected by the view that petitioner had committed 11 separate contempts.

*Yates*, 355 U.S. at 75, 78 S.Ct. at 134. We similarly believe that Armentrout's sentence may have been affected by the trial court's view that four separate contempts had been committed. We therefore remand for resentencing.

## DECISION

Multiple refusals by a witness to answer questions that address a single subject of inquiry constitute a single criminal contempt. The first contempt conviction is affirmed, the three remaining convictions are reversed, and the case is remanded for resentencing.

Affirmed in part, reversed in part, remanded.