**RIVER TOWERS ASSOCIATION, a Minnesota Non–Profit Association, Respondent,**

v.

**Daniel J. McCARTHY, Appellant.**

**No. C0–91–1872.**

Court of Appeals of Minnesota.

March 24, 1992.

Review Denied May 21, 1992.

David L. Sasseville, Lindquist & Vennum, Minneapolis, for respondent.

John G. Westrick, Walsh & Westrick, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and DAVIES and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Daniel McCarthy appeals from a judgment finding him in civil contempt and permanently enjoining him from speaking to River Towers Association officials and security guards except in emergencies or through certain channels. We affirm in part and reverse in part.

## FACTS

Appellant Daniel McCarthy has been a resident of the River Towers Condominiums since 1966. He is also a member of

the River Towers Association. River Towers rules prohibit "boisterous, offensive or obnoxious conduct" within the building's common areas. The parties agree that McCarthy can be "cantankerous and rude," and that he has had several disagreements with River Towers Association officials over the years. McCarthy does not dispute River Towers' documented claims that he continually harangued security guards, River Towers officials and other tenants. The cumulative effect of McCarthy's conduct led River Towers to seek injunctive relief in 1989.

On March 17, 1989, the trial court issued a temporary restraining order prohibiting McCarthy from communicating with River Towers security staff except in emergencies, and prohibiting all but written or telephonic communication with designated River Towers Association officials. The trial court later modified the restraining order at McCarthy's request to allow access to various condominium facilities and services. On November 17, 1989, the trial court issued a temporary injunction that incorporated the prior restraining orders. McCarthy's former counsel served the November injunction on McCarthy by mail.

River Towers concedes there was no trouble with McCarthy for about one year. However, on November 30, 1990, River Towers requested and received an order to show cause why McCarthy should not be held in contempt for violating the temporary injunction. River Towers produced several affidavits documenting numerous violations of the temporary injunction. Perhaps the most serious breach involved a verbal and physical assault on caretaker Jeffrey Howard, which McCarthy admitted. Howard told River Towers that he would quit if McCarthy confronted him again. A number of other employees made the same threat to River Towers.

After four days of hearings, the trial court found McCarthy in civil contempt and fined him $250. The trial court also permanently enjoined McCarthy from speaking with River Towers officials and security guards except in the manner previously described. Finally, the trial court awarded River Towers $13,368.33 in attorney fees and costs pursuant to River Towers Association bylaws, Minn.Stat. § 515A.4–115 (Uniform Condominium Act) and Minn.Stat. § 588.11 (contempt statute).

McCarthy's new trial motion was denied, and judgment was entered. On appeal, McCarthy claims the contempt finding was erroneous, the injunction violates his first amendment rights, and the fee award is excessive.

## ISSUES

1. Did the trial court err in determining McCarthy was in constructive civil contempt for violating the terms of the temporary injunction?
   a. Was the temporary injunction valid and enforceable over McCarthy's first amendment rights?
   b. Did the trial court's order constitute a finding of criminal, rather than civil contempt?
2. Did the trial court err in finding River Towers suffered sufficient harm from McCarthy's conduct to justify the imposition of a permanent injunction?
3. did the trial court properly award River Towers its costs and attorney fees?

## ANALYSIS

### I.

Before a party may be held in criminal or civil contempt, the trial court must find that the underlying order is valid and that the alleged contemner had sufficient notice of the restraints imposed on his behavior. *State ex rel. L.E.A. v. Hammergren*, 294 N.W.2d 705, 708 (Minn.1980). In this case, McCarthy argues the terms of the permanent injunction violate his right to free speech under the first amendment. Because the permanent injunction simply restates the terms of the temporary injunction, we consider the constitutional validity of the permanent injunction in the context of the trial court's finding that McCarthy was in contempt for violating the temporary injunction.

### a.

A time, place, or manner restriction of speech will survive constitutional scruti-

ny only if 1) it is content-neutral; 2) it is narrowly tailored to serve a significant governmental interest; and 3) it leaves open ample alternative channels for communication of the information. *Goward v. City of Minneapolis,* 456 N.W.2d 460, 464 (Minn.App.1990) (citing *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989)).

The injunction in this case prohibits McCarthy from communicating with security guards and office staff except 1) in the case of an emergency; 2) to exchange customary greetings; and 3) by telephone, to arrange for guest parking or to pick up packages. McCarthy is also prohibited from communicating with River Towers officials except by telephone, letter, or by pre-arranged meeting with the River Towers president or property manager.

McCarthy argues the injunction is not content-neutral because the injunction was designed specifically to prohibit the communication of any but pre-approved expressions. We disagree. The only restriction placed on McCarthy concerns the manner, not the content of his communication with River Towers officials. The injunction merely prohibits spontaneous, face-to-face conversations. McCarthy is free to express any idea in any terms as long as he communicates by letter, over the telephone, or at a prearranged meeting. We hold these alternative channels of communication are sufficient to serve McCarthy's right to freely express himself. As to the other requirement noted in *Goward,* we hold the injunction is narrowly drawn to serve a significant state interest in keeping peace, and in enforcing the rights of its citizens under private contracts. *See Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 94 (Minn.1979). Therefore, we conclude both the temporary and permanent injunctions do not impermissibly burden McCarthy's first amendment rights. We are also unpersuaded by McCarthy's argument that he did not have notice of the temporary injunction.[1]

**b.**

Having decided the temporary injunction was valid, and that McCarthy had notice of the order, this court next considers McCarthy's argument that the trial court's finding of contempt and imposition of a $250 fine for violating the terms of the temporary injunction constituted a finding of criminal, rather than civil contempt. The distinction between criminal and civil contempt stemming from our supreme court's decision in *Hopp v. Hopp,* 279 Minn. 170, 156 N.W.2d 212 (1968) was set forth by this court in *Nelson v. Nelson,* 408 N.W.2d 618, 621 (Minn.App.1987):

> Whether a contempt proceeding is civil or criminal depends on the purpose behind the court's exercise of its contempt power. The purpose of criminal contempt is to vindicate the authority of the court and punish the contemnor for past behavior, usually through a fixed, unconditional sentence. The purpose of civil contempt is to vindicate the rights of an opposing party by coercing compliance with an order through imposition of a sanction of indefinite duration, to be lifted upon compliance.
>
> \*      \*      \*      \*      \*      \*
>
> [C]ivil contempt power, by definition, cannot be used to punish a person for past misconduct. Since the purpose of civil contempt is to coerce compliance rather than to punish, the contemnor must have the keys to his jail cell.

(Citations omitted).

In this case, the trial court found McCarthy in civil contempt and fined him $250 because he violated the temporary injunction. McCarthy argues the finding is criminal because the fine was an unconditional punishment for past conduct, allowing no opportunity to purge the contempt through future compliance. We agree, but with significant reservations.

As plainly set forth in *Nelson,* the imposition of an unconditional sanction for

---

**1.** There is no dispute that McCarthy knew about *prior* orders restricting his contact with River Towers personnel. The November 17 order merely incorporated the terms of the prior or-ders in the form of a temporary injunction. Even if he had no knowledge of the November 17 order, McCarthy had no reason to believe he was free to act in violation of the earlier orders.

past contumacious conduct is an exercise of criminal contempt power. While some distinction could be made in this case between a fine and imprisonment, the end result is the same: the trial court seeks to unconditionally punish the contemner for violating an order. In this case, there is no provision for McCarthy to purge the contempt, and there is no mechanism for compelling future compliance. In the absence of these features, we must conclude that the finding was an exercise of criminal contempt power. In criminal contempt proceedings the person charged is entitled to a jury trial. Because there was no contempt trial in this case, we must reverse the finding of contempt.

## II.

■■■■■ Next we consider McCarthy's argument that the trial court's findings do not support the imposition of a permanent injunction. This court reviews orders granting permanent injunctions according to an abuse of discretion standard. *Cherne Indus.*, 278 N.W.2d at 91. The party seeking a permanent injunction must show that legal remedies are inadequate and that the injunction is necessary to prevent great and irreparable harm. *Id.* at 92. In some cases, irreparable harm may be inferred from the breach of a contract between private parties. *Id.*

In this case, the trial court found that McCarthy 1) bothered other tenants by being excessively loud during quiet hours; 2) rudely confronted security guards who responded to noise complaints; 3) called the security office without justification 13 times in the middle of the night on March 8, 1989; 4) physically and verbally harassed security guards; 5) failed to appear at River Towers meetings to talk about his behavior; 6) assaulted the River Towers caretaker on November 27, 1990; and 7) physically and verbally harassed a tenant on March 1, 1991. The trial court concluded that irreparable harm could be inferred from the fact that McCarthy's conduct breached several provisions of River Towers' by-laws, declarations, and operating policy.

McCarthy argues irreparable harm can only be inferred from breaches of employment contracts involving trade secrets and other confidential information. McCarthy cites no authority for this position. McCarthy also claims that courts cannot infer irreparable harm in cases involving condominium agreements, citing *Bush Terrace Homeowners Ass'n, Inc. v. Ridgeway*, 437 N.W.2d 765 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989). No language in *Bush Terrace* supports McCarthy's position. The court in *Bush Terrace* affirmed an order denying injunctive relief because the condominium association failed to prove the resident's conduct violated association rules, not because the alleged breach of the rules was insufficient as a matter of law to show irreparable harm.

In this case it appears McCarthy violated a number of River Towers rules, chiefly the rule prohibiting "boisterous, offensive, or obnoxious" conduct. The trial court's conclusion that such conduct caused irreparable harm is well within the trial court's discretion.

## III.

Finally, McCarthy argues that the trial court erred in granting fees to River Towers. An award of costs and fees will not be reversed absent an abuse of discretion. *Nelson*, 408 N.W.2d at 622. In this case, the trial court awarded River Towers $13,-368.33 to pay for attorney's fees and costs expended to enforce Association rules and for prosecuting the contempt proceeding. McCarthy concedes the authority to grant fees under Minn.Stat. § 515A.4–115 (Uniform Condominium Act), Association by-laws, and Minn.Stat. § 588.11 (contempt statute).

■■■ McCarthy argues the evidence does not support the amount of fees awarded. At oral argument, McCarthy's counsel conceded that if River Towers had produced a detailed accounting to the trial court in support of the amount claimed, there would be no ground to challenge the amount

awarded. Counsel for River Towers stated at oral argument he offered to provide such an accounting following trial, but the trial court did not require it. We hold it was within the trial court's discretion to award fees without requiring the type of accounting offered by River Towers, but we generally advise against such practice.

McCarthy also argues that he is entitled to attorney fees if he prevails on appeal. While we do reverse the contempt finding, there is no reason to disallow the award of fees to River Towers for prosecuting the contempt proceeding. River Towers incurred those fees in an attempt to secure its rights under the temporary injunction. McCarthy essentially concedes the violation. The fact the trial court imposed an improper sanction is no reason to deny fees. *See Nelson,* 408 N.W.2d at 622. Thus McCarthy is not entitled to fees on appeal.

### DECISION

The trial court lacked authority to unconditionally fine McCarthy for violating a court order because the court failed to hold a criminal contempt trial. However, we find no abuse of discretion in the trial court's conclusion that McCarthy's continuous conduct in violation of Association rules warranted permanent injunctive relief. The injunction does not unduly burden McCarthy's first amendment rights, and the award of costs and fees was within the trial court's discretion.

Affirmed in part and reversed in part.