**ROBBINSDALE CLINIC,**
**P.A., Respondent,**

v.

**PRO–LIFE ACTION MINISTRIES,**
**et al., Defendants,**

**Lori Driver, Appellant.**

**No. C1–93–1951.**

Court of Appeals of Minnesota.

April 19, 1994.

Review Denied June 15, 1994.

Marc G. Kurzman, Kurzman, Grant & Ojala, Minneapolis, for respondent, Robbinsdale Clinic, P.A.,

Barry William McKee, Stillwater, for appellant Lori Driver.

Considered and decided by RANDALL, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Following a hearing before the district court, appellant Lori Driver was found in contempt for communicating with a patient of respondent Robbinsdale Clinic, P.A. (Clinic) and for attempting to communicate with the patient's parents. We reverse.

## FACTS

In response to a request by Clinic, the district court permanently enjoined a number

of parties, including Driver, from harassing people within "Zone A," an area of several square blocks surrounding Clinic. Driver was also enjoined from acting in concert with other people if doing so would result in prohibited activity.

On March 26, 1993, Driver discovered that a woman (Patient X) had an appointment at Clinic. Later that day, Driver left two telephone messages at Patient X's home, asking that Patient X call her. When Patient X did not return the calls, Driver went to Patient X's home during the evening of March 26 and left anti-abortion literature and a plastic model of a fetus on Patient X's doorstep.

On March 27, the day of Patient X's appointment, Driver again called Patient X. Apparently under the mistaken impression that Patient X was a minor who lived with her parents, Driver left a message asking that Patient X's parents call about an emergency concerning Patient X. Patient X reported the call to Clinic. A Clinic representative called the number left by Driver, pretended to be Patient X's father, and discovered that it was the number for the Robbinsdale Women's Center. This organization was located in Zone A and had ties to anti-abortion groups with which Driver was affiliated. The Robbinsdale Women's Center staff member who answered the Clinic representative's call told him that Patient X had gone in for an abortion that day.

As a result of these alleged violations of the permanent injunction, the Clinic moved to have Driver found in contempt. The court granted the motion. After Driver's first appeal was dismissed by this court, the district court reaffirmed the findings and conditions found in its original contempt order and ordered Driver to report to the workhouse.

### ISSUES

1. Does the evidence support the finding of contempt?

2. Did Driver waive her challenge to the injunction's constitutional validity?

3. May Driver constitutionally be held in contempt for communicating with a Clinic patient?

4. May Driver constitutionally be held in contempt for her attempt to communicate with the parents of a Clinic patient?

### ANALYSIS

■ 1. Driver claims that Patient X did not live in Zone A and that she cannot be held in contempt for acts committed outside this area. The record is completely silent as to Patient X's address or identity, in large part because Driver failed to raise this issue during her contempt hearing. In any event, the absence of findings or evidence in the record that Patient X lived in Zone A makes it impossible to support a conclusion that Driver violated the terms of the permanent injunction when she left the first two messages on Patient X's answering machine or when she left the anti-abortion materials on Patient X's doorstep.

Nevertheless, Clinic alternatively claims that Driver's actions justify a finding of contempt because they were initiated and taken in concert with individuals located within Zone A. Therefore, in order to avoid further litigation in this matter, we will address Driver's constitutional arguments at this time. *See Mitchell v. Morten*, 237 Minn. 245, 251, 54 N.W.2d 333, 337 (1952) (issues may be resolved on appeal when relevant parts of record are clear and doing so would avoid unnecessary expense and delay).

■ 2. Clinic contends that Driver waived her objections to the constitutionality of the injunction by failing to appeal when the injunction was first issued. We disagree.

The Minnesota Supreme Court has not decided whether, on appeal from a conviction for violation of an injunction, a contemner can challenge the injunction's facial constitutional validity. *State v. Errington*, 310 N.W.2d 681, 683 n. 1 (Minn.1981). We do not resolve that issue here. Driver, however, does not challenge the facial validity of the injunction.[1] Rather, she challenges the way

---

1. Driver originally contended that the injunction was unconstitutionally vague because it did not define "harassing." "Harassing" is not an un-

constitutionally vague term. *Carpenter v. Mattison*, 300 Minn. 273, 277, 219 N.W.2d 625, 629 (1974); *see also New York State Nat'l Org. for*

in which the district court applied the injunction at her contempt hearing, claiming that her actions may not constitutionally be classified as harassment. Until Driver was found in contempt, and thus made aware that the district court considered her actions to constitute harassment, she had no reason to challenge the injunction. Driver's inability to foresee that a facially acceptable injunction might subsequently be applied in a constitutionally suspect manner should not and does not result in a waiver of her right to challenge the constitutionality of the district court's application of the injunction.

3. Before a party may be held in contempt, a court must determine whether the underlying order is valid. *River Towers Ass'n v. McCarthy,* 482 N.W.2d 800, 803 (Minn.App.1992), *pet. for rev. denied* (Minn. May 21, 1992). A First Amendment challenge to an injunction is analyzed using the same principles applied to other restrictions on speech challenged under U.S. Const. amend. I. *See id.* A restriction on First Amendment rights is not entitled to a presumption of constitutionality. *State v. Casino Mktg. Group,* 491 N.W.2d 882, 885 (Minn. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 1648, 123 L.Ed.2d 269 (1993).

The district court did not find that Driver participated in any enjoined behavior other than harassment. Specifically, the court found Driver in contempt for (1) making two telephone calls to Patient X's home and leaving a call-back request each time; (2) leaving "material of a sensitive and personal nature" (that is, anti-abortion literature and a plastic fetus) on Patient X's doorstep; and, (3) attempting to inform Patient X's parents that Patient X had undergone an abortion. The question we face is whether, consistent with First Amendment principles, Driver's actions may be classified as harassment for the purpose of finding her in contempt. We hold that they may not.

An injunction that prohibits harassment is generally considered a time, place, or manner restriction, since it claims to regulate the way in which a communication is made, not the actual content of the communication. *Northeast Women's Ctr. v. McMonagle,* 939 F.2d 57, 63 (3d Cir.1991). In this case, however, the injunction was not applied in a content neutral manner, as demonstrated by the fact that Driver was found in contempt because of the nature of the material she left on Patient X's doorstep. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumers Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976) (content neutral restrictions regulate without reference to content of regulated speech). Accordingly, there must be a compelling state interest to justify finding Driver in contempt for her attempts to communicate with Patient X. *See R.A.V. v. City of St. Paul,* — U.S. —, —, 112 S.Ct. 2538, 2549–50, 120 L.Ed.2d 305 (1992) (content based restriction will not be allowed unless necessary to serve compelling state interest). We conclude that the district court's interpretation of the injunction renders it too broadly tailored to support any state interest presently before us. *Cf. United States v. Local 560,* 974 F.2d 315, 344 n. 16 (3d Cir.1992) (overbreadth attack on injunction considered as argument that injunction is not tailored narrowly enough).

It is constitutionally permissible for the state to restrict the communication of information to the home of an unwilling recipient. *Frisby v. Schultz,* 487 U.S. 474, 484–85, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988). Similarly, a visitor cannot demand that a residential occupant listen to the visitor's message. *Kovacs v. Cooper,* 336 U.S. 77, 86, 69 S.Ct. 448, 453, 93 L.Ed. 513 (1949). In short, there is no right to force speech into an unwilling listener's home. *Frisby,* 487 U.S. at 485, 108 S.Ct. at 2502.

Nonetheless, restrictions must be tailored narrowly so as to protect only those recipients who are unwilling to receive the communications. *Id.* at 485, 108 S.Ct. at 2503; *see also Consolidated Edison Co. v.*

---

*Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir. 1989) ("tortious harassment" is sufficiently clear term in injunction when "balanced by language * * * sufficiently clear for defendants to ascer-

tain precisely what they could and could not do"), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Driver conceded this point at oral argument.

*Public Serv. Comm'n,* 447 U.S. 530, 542 n. 11, 100 S.Ct. 2326, 2336 n. 11, 65 L.Ed.2d 319 (1980) (even if state has compelling interest in protecting recipients of objectionable mail, state could simply require sender to stop mailing to people who object); *Rowan v. United States Post Office Dep't,* 397 U.S. 728, 736–37, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970) (person may be prevented from mailing information to residence once told to stop by resident); *Martin v. City of Struthers,* 319 U.S. 141, 147–48, 63 S.Ct. 862, 865–66, 87 L.Ed. 1313 (1943) (state can prohibit door-to-door leafletting only where occupant has told distributer of leaflets to stay away). Each of these holdings presuppose that the resident has expressed an unwillingness to listen to the visitor's message. When the state prohibits communication without any prior indication that a resident is unwilling to receive it, violence is done to the premise that the First Amendment protects not only the right to communicate information, but the right to receive it. *See Kleindienst v. Mandel,* 408 U.S. 753, 762–63, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972) (First Amendment protects right to receive ideas and information).

Here, Patient X did not object to Driver's communications before they were conveyed. Clinic implies that we should presume that it acted on behalf of its patients when it sought the injunction, and further presume that its patients do not wish to receive Driver's message. These presumptions cannot be reconciled with the First Amendment's guarantee of the right to freely debate matters of public concern. *See Frisby,* 487 U.S. at 479, 108 S.Ct. at 2499 (topic of abortion is entitled to First Amendment protections given to discussions of other public concerns).

Furthermore, Clinic's position would improperly give a medical facility the power to decide what information may be provided to its clients. As was explained in a similar situation:

> The clinic wishes potential clients to be shielded from hearing advocacy with which it disagrees so that they will obtain abortions. But obtaining abortions is not in issue; the availability of abortion services * * * * continues. The clinic's real complaint is that the choice has been made

more difficult because of adverse information communicated to potential patients. Yet making choices more difficult is not the same as eliminating the right to choose. In fact, in a polity where the people are sovereign, informed choice enhances responsible decision-making. Neither we nor the clinic can cut off the peaceful communication of information, distasteful to some though it may be.

*Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788, 796 (5th Cir.1989) (footnote omitted). Based on an injunction to which Clinic patients were in no sense a party, Driver may not be held in contempt for communicating with Patient X.

■ 4. Driver's attempt to call Patient X's parents raises other questions. At the outset, though, we note that there has been no allegation that Driver unlawfully obtained the information about Patient X's appointment at Clinic. *See The Florida Star v. B.J.F.,* 491 U.S. 524, 534, 109 S.Ct. 2603, 2609, 105 L.Ed.2d 443 (1989) (under some circumstances government may forbid nonconsensual acquisition of sensitive information in private hands).

The Minnesota Supreme Court has never held that the constitutional right of privacy includes a right to prevent the public disclosure of personal information. *Keezer v. Spickard,* 493 N.W.2d 614, 619 (Minn.App. 1992), *pet. for rev. denied* (Minn. Feb. 12, 1993). In addition, the court has expressly declined to recognize a civil claim for invasion of privacy. *Hendry v. Conner,* 303 Minn. 317, 319, 226 N.W.2d 921, 923 (1975); *see also Stubbs v. North Memorial Medical Ctr.,* 448 N.W.2d 78, 80–81 (Minn.App.1989) (invasion of privacy action not allowed against physician who published "before" and "after" photographs of patient), *pet. for rev. denied* (Minn. Jan. 12, 1990).

Finally, even where invasion of privacy claims are recognized, they are generally not allowed where private facts are only communicated to a single person or a small group of people, as was the case here. Restatement (Second) of Torts § 652D cmt. a (1976). Given that Clinic has not shown that Patient X's constitutional right of privacy was violated, and in light of the fact that a tort claim for

invasion of privacy against Driver would not be recognized, we cannot uphold the more constitutionally suspect state action of finding Driver in contempt for attempting to communicate with Patient X's parents.

## DECISION

The record does not support a conclusion that Driver's first two telephone calls or delivery of materials to Patient X's home took place within the area described by the permanent injunction. Driver has not waived her challenge to the constitutionality of the district court's interpretation of the permanent injunction. Driver may not constitutionally be found in contempt for her efforts to communicate with Patient X or Patient X's parents.

**Reversed.**

RANDALL, Judge (concurring specially).

I concur in the result, and write separately to emphasize the lack of support in the record for the finding of contempt.

The trial court's seminal findings of fact are as follows:

1) That on or about March 26, 1993, defendant Driver made two phone calls to the personal residence of "patient X" and left a message to call her back.

2) That on or about March 26, 1993 or March 27, 1993, defendant Driver entered onto private property of "patient X" and placed material of a sensitive and personal nature on "patient X's" doorstep.

3) That on March 27, 1993, defendant Driver made a telephone call to a number she believed was that of the parents of "patient X."

4) That the phone call was made under the auspices of there being an emergency relating to their daughter, "patient X." This statement was predicated on a false belief.

5) That these contacts with "patient X" are in violation of the January 11, 1993 Permanent Injunction, *specifically para-* *graph (10) dealing with the harassment of patients of the Clinic.*

(Emphasis added.)

The "paragraph 10" of the permanent injunction, which the trial court specifically referred to for the underpinnings of its contempt order, provides:

Harassing, taunting, or shouting at individuals by "Pro–Life" demonstrators; "Pro–Choice" demonstrators; "Clinic" employees, agents, representatives, or volunteers; and "Organizations" employees, agents, representatives, or volunteers is prohibited within the entirety of "Zone A" and constitutes a violation of this Order.

Thus, the trial court's findings of fact are precise and a model of clarity. They set out telephone calls on two specific dates, March 26 and March 27, and one instance at or about the same time when material was left at the home of patient X. Those specific findings are not ambiguous and cannot be misunderstood. Those findings then relate back to paragraph 10 of the permanent injunction dated January 11, 1993. Paragraph 10 is not ambiguous, and is clear that harassing, taunting, or shouting at specific classes of people within "Zone A" will constitute a violation of the order.

As the majority cogently points out, *nothing ever happened within Zone A.* The trial court never found that anything happened in Zone A. In addition to that lack of an essential finding, both parties at oral argument, candidly and with professional courtesy, told this court on the record that not only is there no evidence that patient X lives in Zone A, but all the information they have is to the contrary.

Further, paragraph 10 specifically delineates what would be a violation of the order, harassing, taunting, or shouting. There is no specific finding by the trial court that the phone calls to patient X's residence or the delivery of material to her residence constituted "harassing, taunting, or shouting." The majority correctly points out there is no evidence to support a finding that patient X did not wish to receive the message in the telephone calls; and we are not in a position

to impose a "prior restraint" on speech where the record is lacking.

Since the trial court tied its specific contempt findings to a specific paragraph in a prior permanent injunction, the record on appeal must be judged within those narrow boundaries. I agree with the majority that the finding of contempt must be reversed.

LANSING, Judge (dissenting).

I respectfully dissent because I disagree with the majority's constitutional analysis and its disposition of the appeal. The district court crafted a comprehensive injunction to deal with the escalating problems caused by protestors near the Robbinsdale Clinic. The injunction imposes time, place, and manner restrictions on expression. *See Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 298, 104 S.Ct. 3065, 3071, 82 L.Ed.2d 221 (1984).

Time, place, and manner restrictions are valid only if they are content neutral; narrowly tailored to serve a significant government interest; and leave open ample alternative channels for communication. *Frisby v. Schultz,* 487 U.S. 474, 481, 108 S.Ct. 2495, 2500–01, 101 L.Ed.2d 420 (1988). An analysis of the injunction demonstrates that it withstands constitutional scrutiny on all three bases.

First, the injunction is for the content-neutral purpose of preventing harassment. *See Northeast Women's Ctr. v. McMonagle,* 939 F.2d 57, 63 (3d Cir.1991). Second, the injunction is narrowly tailored to serve a significant government interest. The individual right to make a decision on abortion has historically been recognized as a personal privacy right. *See Roe v. Wade,* 410 U.S. 113, 154, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973); *see also Minnesota Medical Ass'n v. State,* 274 N.W.2d 84, 91 (Minn.1978). The Supreme Court recently reaffirmed this right as a liberty right in *Planned Parenthood v. Casey,* — U.S. —, —, 112 S.Ct. 2791, 2804, 2817, 120 L.Ed.2d 674 (1992).

The state has an interest in ensuring "maximum safety for the patient," and this interest is sufficient to enjoin harassing conduct aimed at patients of abortion clinics.

*See Northeast Women's Ctr.,* 939 F.2d at 63 (quoting *Roe,* 410 U.S. at 150, 93 S.Ct. at 725). The injunction prohibits the "[h]arassing, taunting, or shouting at individuals * * * within the entirety of "Zone A" * * *." This language limits only expression that is communicated in a manner that interferes with the operation of the clinic and intrudes on privacy and liberty rights of others. The injunction is narrowly tailored.

Third, the injunction leaves open ample alternative channels for communication. The injunction allows the distribution of literature in front of the clinic, but limits the number of pro-choice and pro-life demonstrators within specific areas and prohibits harassment within Zone A.

The question of whether Lori Driver violated the injunction is less straightforward. I disagree with the majority's conclusion that the record contains insufficient evidence of harassment. The record provides ample evidence of harassment and there is also evidence that Driver had some connection to these activities. There are, however, insufficient findings explaining how the trial court concluded that Driver's actions violate the injunction.

On March 26, 1993, Driver made two telephone calls to Patient X's home and left messages for Patient X to return the calls, which Patient X did not do. During the night Driver went to Patient X's home and left anti-abortion literature and a plastic model of a fetus on Patient X's doorstep. Driver attempted to reach Patient X's parents the next morning and left a message on a recorder stating that there was an emergency relating to their daughter and that they should call the telephone number provided.

On the same day, Driver stood on a corner within a block of the clinic, but outside Zone A, while protestors screamed at Patient X as she entered the clinic. Protestors yelled to Patient X to go talk to "Lori" on the street corner. While Patient X was in the clinic, the protestors yelled Patient X's full name and accused her of murdering her baby. At the same time, although the evidence does not connect the action to Driver, someone Patient X did not know called the clinic and

left a message for her that said Patient X's parents had found out about Patient X's actions and were very upset.

Findings on civil or criminal violations of contempt orders are customarily reviewed under an abuse of discretion standard. *In re Contempt of Armentrout,* 480 N.W.2d 685, 688 (Minn.App.1992). Proper review of a trial court's discretion requires knowledge of the trial court's basis for action. *See Layton v. Legislative Audit Comm'n,* 283 N.W.2d 1, 2–3 (Minn.1979) (uncertainty underlying contempt citation required remand to district court). The lack of specificity in the trial court's findings appears to be attributable to multiple defendants raising different issues and the defense attorney's appeal of some issues that were not fully contested and resolved in the initial hearing or preserved in the posttrial motions.

The result of this unwieldy process is that the district court's findings identify specific acts of Lori Driver and state that the acts violate paragraph 10 which prohibits harassment of patients of the clinic, but the findings do not state the way in which the acts violate the order. Respondents contend that Driver was found in contempt for orchestrating and participating in the acts that culminated in the harassment of Patient X. Respondents further argue that Driver's failure to challenge these underlying assumptions at trial resulted in the deficiencies, if any, in the findings.

Whether or not that is accurate, the findings themselves do not say whether the court concluded that Driver's contacts violate the injunction because Driver was acting as a principal directing agents (as prohibited in section 5 of the injunction), because Driver was acting in concert with others (also prohibited in section 5 of the injunction), whether the contempt finding is a reinstatement of the earlier contempt determination against Driver that was provisionally dismissed (as provided in section 3 of the injunction), or whether the court concluded that Driver's individual actions within Zone A constituted an independent violation of the injunction.

The purpose of the contempt power is to provide the trial court with a means to promptly enforce orders. *See Hopp v. Hopp,* 279 Minn. 170, 174, 156 N.W.2d 212, 216

(1968). But, the court's broad discretion to impose contempt sanctions must be limited by procedural requirements. *See State by Johnson v. Sports & Health Club,* 392 N.W.2d 329, 336 (Minn.App.), *pet. for rev. denied* (Minn. Sept. 24, 1986). The record in this case is extensive and includes a number of videotapes. The court observed a videotape of the March 27 activities in front of the clinic but this video was not part of the record on appeal. The injunction and accompanying memorandum itself is twenty-four pages. Rather than theorizing on whether any of Driver's actions could properly be considered violations, it is more appropriate to remand to the district court to get specific findings that can be subjected to rational review. *Layton,* 283 N.W.2d at 2.

A remand is particularly appropriate in light of a companion case, already decided by this court, that addresses whether the imposed penalties constitute criminal or civil contempt. *See Robbinsdale Clinic v. Pro-Life Action Ministries,* No. C5–93–1080, 1994 WL 71389 (Minn.App. Mar. 8, 1994). For these reasons, I would remand to the district court for additional proceedings.