In re the SEARCH WARRANT OF
COLUMBIA HEIGHTS,
Respondent,

v.

Bennie ROZMAN, d/b/a Lynde
Investments, Appellant.

No. C3–98–1016.

Court of Appeals of Minnesota.

Nov. 24, 1998.

Review Denied Jan. 21, 1999.

James D. Hoeft, Malcolm P. Terry, Barna, Guzy & Steffen, Coon Rapids, MN, for respondent.

John W. Tackett, Michael A. Rozman, Minneapolis, MN (for appellant).

Considered and decided by SCHUMACHER, P.J., and PETERSON and HARTEN, JJ.

## OPINION

HARTEN, Judge.

This appeal is from an order finding appellant Bennie Rozman, d/b/a Lynde Investments, in civil contempt for failing to comply with orders requiring him to provide structural access to housing inspectors for respondent Columbia Heights (City) who were executing administrative search warrants. We affirm.

## FACTS

Rozman owns a number of apartment buildings in Columbia Heights. City, which has a high percentage of rental housing, has enacted a Housing Maintenance Code to ensure that rental units are in satisfactory condition. The code, as amended in 1994, requires annual inspections of apartment rental units. The code includes the following provision to ensure access to inspectors:

> If an owner, occupant, or other person in charge of a dwelling, dwelling unit or of a multiple dwelling fails or refuses to permit free access and entry to the structure or premises, or any part thereof, for an inspection authorized by this Ordinance, the Enforcement Official may, upon a showing that *probable cause* exists for the inspection or for the issuance of an order directing compliance with the inspection requirements of this section with respect to such dwelling, dwelling unit or multiple dwelling, petition and obtain an order to inspect *and/or search warrant* from [a] court of competent jurisdiction.

Columbia Heights Housing Maintenance Code § 5A.302(1) (emphasis added).

Rozman engaged City in a lengthy dispute over access to apartment rental units whose tenants had not consented to an inspection,

culminating in this contempt proceeding. The factual record is limited to various affidavits filed by the parties, with attached documents. Rozman indicates that City revoked his license in March 1997 for refusing to open apartment rental units to inspection without tenant consent. City states that it acceded to Rozman's demand that City obtain either tenant consent or an administrative search warrant before conducting the inspections. As a part of that compromise, according to City, Rozman agreed to the administrative search warrant procedure, with the date and time of the inspections to be specified so that Rozman could provide access under the warrants. The parties appear to agree that on July 17, 1997, Rozman did assist City in conducting rental unit inspections pursuant to administrative search warrants.

City found violations in various rental units during the July 1997 annual inspections. As a result, City gave notice of its intent to perform re-inspections of those units in October and November 1997 to determine whether the violations had been corrected. The October–November 1997 re-inspections were conducted pursuant to administrative search warrants, and Rozman or an employee provided access to the rental units.

City sought another round of re-inspections of units that had not passed the previous re-inspections in December 1997. City applied for the administrative search warrants on December 4, 1997. The application stated that the search warrant

> is necessary in the instant situation as the above-identified properties are due for the re-inspection of the re-inspections conducted in November of this year. As a result, probable cause exists for the issuance of an administrative search warrant to conduct the Housing Maintenance Code inspections.

The search warrant directed that

> the Building Manager/owner, Mr. Bennie Rozman, or any agent of his, accompany Mr. Kewatt [City fire chief], and persons under his direction or control, during the inspection for the sole purpose of unlocking any apartment unit(s) where the ten-

ants are either unwilling to consent to the inspection or are not home.

When Rozman did not appear on December 5 or December 9 to assist in execution of the search warrants, City filed a motion for an order to show cause why Rozman should not be held in contempt of court. The district court held a hearing and then issued an order finding Rozman in civil contempt for failure to comply with the orders contained in the December 4, 1997, search warrants. The court sentenced Rozman to 90 days in jail, while providing that Rozman

> may purge himself of this contempt by agreeing, in writing, in a form acceptable to [City], that he will honor any supplemental orders and search warrants directed to him within [City]'s jurisdiction.

## ISSUE

Did the district court abuse its discretion in finding appellant in contempt?

## ANALYSIS

This court reviews a contempt order under an abuse of discretion standard. *In re Contempt of Armentrout*, 480 N.W.2d 685, 688 (Minn.App.1992). Rozman challenges the findings in the district court's contempt order, and raises various challenges to the administrative search warrants themselves, particularly the language directing Rozman to offer assistance in the execution of the warrants.

■ Rozman argues that City lacked authority to obtain administrative search warrants to be executed by City's fire chief.

The basic authority for administrative search warrants is found in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). *Camara* held that administrative searches "are significant intrusions upon the interests protected by the Fourth Amendment" and therefore are covered by the warrant requirement. *Id.* at 534, 87 S.Ct. at 1733. The Court, however, held that the Fourth Amendment's probable cause standard is satisfied if the search is reasonable. *Id.* at 534, 87 S.Ct. at 1734. The Court concluded that "routine periodic inspections of all structures" or "area inspec-

tion[s]" are reasonable even without probable cause to believe there is a code violation in a particular structure. *Id.* at 535–36, 87 S.Ct. at 1734–35. The Court held that "reasonable legislative or administrative standards for conducting an area inspection" must be satisfied. *Id.* at 538, 87 S.Ct. at 1736. The Court elaborated:

> Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multi-family apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.*

Rozman argues that *Camara* merely provides guidance for legislative enactment of statutes authorizing administrative search warrants. He notes that there is no Minnesota statute specifically authorizing housing-inspection search warrants. But, *Camara* referred to "reasonable legislative or administrative standards," *id.*, in the alternative, and did not require that the "administrative standards" be set by statute. Moreover, the *Camara* court was discussing general "area inspections." The search warrants issued in this case were not for general "area inspections" but rather for re-inspections of particular structures in which code violations had already been identified. The search warrants were supported by the traditional probable cause standard applied to non-administrative investigatory search warrants. Accordingly, we find no merit in Rozman's argument that the warrants are invalid for lack of statutory authorization.

■ Rozman's argument that probable cause is lacking is therefore also meritless. The December 4 search warrants were for re-inspections of rental units in which violations had been discovered. *Camara* suggests that probable cause may be based merely on the "passage of time" or on the nature of the building, for example an apartment building. *Id.* The re-inspection warrants in this case fall easily within that standard of probable cause.

Rozman contends that the December 4, 1997, search warrants allowing a search by the fire chief violate statutory provisions in chapter 626. It is true that a fire chief is not within the category of "peace officer" as defined by statute. Minn.Stat. § 626.84, subd. 1(c) (1996). But the search warrants issued here were not investigatory warrants, issued for the investigation of crime, but rather administrative search warrants for purposes of enforcing the housing code.

■ There are a number of statutory provisions authorizing administrative search warrants for specific purposes other than the general investigation of crime. *See, e.g.,* Minn.Stat. §§ 299F.08, subd. 2 (1996) (authorization for entry by state fire marshal pursuant to administrative search warrant), 340A.704 (1996) (authorization for search warrants for liquor law violations). There is no statute specifically authorizing administrative search warrants for housing code inspections. But that does not make such warrants subject to the provisions of chapter 626.

Rozman's argument on this issue is self-contradictory. He claims that the December 4 warrants violated chapter 626 because they were not executed by a peace officer and because they were not executed within 10 days as required by Minn.Stat. § 626.15 (1996). But if, as he argues, chapter 626 provides no authority for the issuance of the warrants, violation of its provisions is immaterial.

A statute providing a general authorization for administrative search warrants, or a specific authorization for housing inspection search warrants, would assist housing code enforcement in Minnesota. Legislative enactment of such a statute would remove any possible confusion over the authority for administrative search warrants or when or how housing inspection officials may execute them. We invite legislative attention to this area of the law. But *Camara* does not *require* such a statute, and we conclude there was no violation of any applicable statutes in this case.

■ City's search warrant applications cited Minn.Stat. § 626.07(5), City's Housing Maintenance Code, and the *Camara* decision. Any error in citing chapter 626, however, is

immaterial. Although a search warrant application must state the *facts* supporting issuance of the warrant, Rozman presents no authority holding that the application must provide the judge with the *legal authority* for issuance of the warrant. *See generally State v. Kahn*, 555 N.W.2d 15, 17 (Minn.App. 1996) (holding purpose of affidavit supporting warrant application is to allow magistrate to independently determine whether probable cause exists to support issue a warrant). In any event, the search warrant applications did cite adequate authority in *Camara* and the Housing Maintenance Code.

■ In addition to challenging the administrative search warrants, Rozman argues that the orders to assist in execution of the warrants were themselves invalid. He claims that he did not receive notice of the orders and that City did not comply with the requirements of Minn. R. Gen. Pract. 3.02 for obtaining ex parte relief.

Rozman was put on notice that warrants would be issued by the previous search warrants and by the whole history of his dispute with City, in which he had insisted that City gain access by means of search warrants. *Cf. State v. Erickson*, 367 N.W.2d 539, 540 (Minn.App.1985) (defendant had adequate notice of current nuisance violation where he received notice of violation in prior year and failed to abate nuisance in current year). Moreover, Rozman does not deny that his attorney was contacted by City's attorney before the December 5 search warrant date and informed that the re-inspection warrants would be sought. We agree with the district court's conclusion that Rozman had ample notice that he would be ordered to assist in the execution of further re-inspection warrants.

Rozman complains that, in applying for the December 4 warrants, City did not make a showing that it had made no prior applications for the same relief. *See* Minn. R. Gen. Pract. 3.02(1). But assuming Rule 3.02(1) applies to search warrant applications, City *had* applied for similar relief in seeking the July 1997 warrants and the October 1997 re-inspection warrants. Those applications and direct communications with Rozman's attorney put Rozman on notice that future re-inspection warrants would be applied for. Rozman had ample notice that the state would apply for re-inspection warrants and cannot complain that City did not comply with Rule 3.02.

Rozman's argument that he did not receive adequate notice of the orders to assist in execution of the warrants confuses service with notice. Rozman claims he was not served with the warrants, including the orders, until December 18. But he cites no authority holding that a party cannot be held in contempt unless he was *served* with the order he is charged with disobeying. *See River Towers Ass'n v. McCarthy*, 482 N.W.2d 800, 803 (Minn.App.1992) (alleged contemnor must have had sufficient *notice* of restraints imposed on his behavior), *review denied* (Minn. May 21, 1992).

City's attorney filed an affidavit stating that he told Rozman's attorney that re-inspections would occur on December 5 pursuant to administrative search warrant. Rozman had ample notice he would be required to assist in executing the warrants.

■ Rozman's challenges to the contempt order are also without merit. Although some time had elapsed between the issuance of the search warrants and the filing of the contempt motion, Rozman is not being punished for past misconduct. *See generally Hopp v. Hopp*, 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968) (purpose of civil contempt is to secure compliance with an order, not to punish for past misconduct). The warrants did not specify a date of execution. Moreover, they were for re-inspections that Rozman had reason to know City was going to continue to pursue. Rozman's attorney expressed to City's attorney a blanket refusal to comply, apparently unlimited by date or time. Given the history of Rozman's dispute with City over the inspections and the ongoing nature of the attempts to re-inspect, the district court could properly hold Rozman in contempt for failing to obey the orders contained in the December 4 search warrants. The search warrants had not expired by their own terms and had never been reversed or nullified. *Cf. Red River Potato Growers' Ass'n v. Bernardy*, 128 Minn. 153, 150 N.W.

383 (1915) (holding that appellant could not be held in contempt for violating order that supreme court had reversed).

▮ Rozman also argues that the district court's purge condition, that he agree in writing to honor any search warrants and supplemental orders obtained by City, is invalid. But although this purge condition may not remedy directly the failure to comply with the December 4 warrants, it is a reasonable remedy in light of the ongoing nature of the dispute. Any other interpretation of the *Hopp* requirements would condemn City to endless, futile cycles of search warrants followed by contempt motions.

## DECISION

The district court did not abuse its discretion in finding Rozman in contempt.

**Affirmed.**